FLOYD K. WHITTEMORE

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed April 18, 1907—Rehearing denied June 15, 1907.*

1. PUBLIC OFFICERS—*State Treasurer is entitled to no fees outside of his salary.* Under the constitution and statutes of Illinois the State Treasurer is required to pay into the State treasury, as revenue, all fees collected by him as treasurer, and is prohibited from retaining any fees, perquisites, benefits or compensation other than the salary fixed by law.

2. SAME—*State Treasurer has no right to pay expenses not provided for by law.* The State Treasurer has no right to incur or pay any expenses of his office beyond those which have been provided for by appropriation acts of the legislature, and if he personally pays expenses not so provided for he cannot lawfully reimburse himself from the State treasury unless the legislature appropriates the money for that purpose.

3. FEES AND SALARIES—*registered bond fund fees belong to the State.* Money collected under the act relating to railroad and improvement aid bonds (Laws of 1877, p. 161,) as "costs to the State" of collecting and disbursing the registered bond funds belongs to the State, and not to its State Treasurer or Auditor or to the various municipalities whose bonds are registered under the act; and while the State is merely custodian of the amount raised for the payment of interest and principal upon the bonds, it is the absolute owner of the amount collected as costs to the State, and the same must be paid into the State treasury as revenue, which can be withdrawn only upon appropriation by the legislature.

4. STATUTES—*rule of contemporaneous construction does not apply where statute is unambiguous.* The fact that State Treasurers and Auditors, since the passage of the Railroad and Improvement Aid Bonds act, have uniformly construed such act as entitling

such officers personally to the money collected thereunder as "costs to the State" for collecting and disbursing the registered bond funds is no defense, under the rule of contemporaneous construction, to an action by the State on a State Treasurer's bond to recover such money, since the ownership thereof by the State is declared by the statute in plain and unambiguous terms. (*Nye* v. *Foreman,* 215 Ill. 285, and *County of Cook* v. *Healy,* 222 id. 310, distinguished.)

5. LIMITATIONS—*statute does not apply to State unless it is so expressly provided.* The Statute of Limitations is no defense to an action by the State to recover from the bondsmen of a former State officer moneys claimed to be due the State, since, unless specially named, the State is not embraced within a statute of limitations.

6. INTEREST—*when bondsman is not liable for interest accruing before suit was brought.* In an action against the bondsman of a State officer to recover money belonging to the State, which the officer, under a mistaken interpretation of the law, retained as his own without concealment or any attempt to delay demand or suit by the State, interest is recoverable only from the time the suit was instituted, if there was no previous demand for payment.

7. SAME—*what is necessary in order to make delay vexatious and unreasonable.* To justify the allowance of interest for unreasonable and vexatious delay the debtor must have in some way thrown obstacles in the way of the collection of the claim, or by some circumvention or management of his own have induced the creditor to delay proceedings for collection longer than he would otherwise have done.

CARTER, J., dissenting.

WRIT OF ERROR to the Circuit Court of Sangamon county; the Hon. ROBERT B. SHIRLEY, Judge, presiding.

This suit is an action of debt begun in the circuit court of Sangamon county on the bond of ex-State Treasurer Henry Wulff, to recover from plaintiff in error, Floyd K. Whittemore, one of the sureties on the official bond of said State Treasurer, the sum of $4295.88, which it is claimed said Henry Wulff, during his term of office, wrongfully and unlawfully drew out of the State treasury and appropriated and converted to his own use, in addition to his salary as fixed by law and in addition to all appropriations made for clerk hire, expenses, etc., of his said office.

The declaration contained five counts. The first three in different phraseology charged Wulff with appropriating and converting to his own use $4295.88 of moneys belonging to the State which he had collected as Treasurer under the statutes relating to registered bond funds as costs and expenses to the State of collecting and disbursing said funds, which amount was in excess of his salary and in addition to all appropriations made by law to him as Treasurer. The fourth count charged him with drawing out of the treasury of the State of Illinois $4295.88 upon a certain warrant signed by the Auditor of Public Accounts and countersigned by said Wulff, as Treasurer; that said sum of money was not drawn upon said warrant in pursuance of any appropriation made by law, but was unlawfully drawn by said Henry Wulff and converted to his own use. The fifth count charged that January 29, 1896, the State owned and had in its treasury a large sum of money, to-wit, $20,-000, that had been raised by taxation, in accordance with law, to reimburse the State for the costs and expenses it had incurred in collecting and disbursing the registered bond funds collected by taxation for the purpose of paying principal and interest upon certain registered bonds; that said Henry Wulff then and there unlawfully procured the Auditor of Public Accounts to issue and deliver to him a warrant for the sum of $4295.88; that said Henry Wulff, as Treasurer, unlawfully countersigned said warrant and paid to himself the amount thereof out of money belonging to the State of Illinois, and that said sum was not paid to or received by him in pursuance of any appropriation made by law.

The plaintiff in error demurred to the declaration. The court overruled the demurrer and he thereupon filed seventeen pleas. No pleas were filed by Wulff. Defendant in error demurred to all of the pleas, which demurrer was sustained by the court, and the plaintiff in error electing to abide by his pleas, the court rendered judgment against him

for the amount of the warrant mentioned in the declaration, together with interest thereon, and the case has been brought here for review by writ of error.

It will not be necessary to set out plaintiff in error's pleas Nos. 1, 3, 4, 7 and 13, as the correctness of the trial court's ruling in sustaining the demurrer to these pleas is not discussed or questioned in the brief and argument of plaintiff in error.

The second, fifth, sixth and eighth pleas are not identical, but are so nearly alike in substance that for the sake of brevity it may be stated that the defenses set up by these pleas are, that the moneys sued for were not the moneys of nor a part of the revenues of the State but belonged to the various municipalities therein; that said Henry Wulff, as Treasurer, in receiving and disbursing the moneys of said municipalities, the said registered bond funds, was required to employ additional help and expend various sums on account of receiving and disbursing said funds, amounting in the aggregate to the sum named in the warrant, and that he had a lawful right to draw out and retain, to cover his said necessary expenses, the sum of money mentioned in said warrant, without any special appropriation therefor.

Plea No. 9 sets up and relies upon the five year statute of limitations. Said plea avers that the moneys mentioned in the declaration came into the hands of Henry Wulff as registered bond funds, and not from taxes and revenues raised for and belonging to the People of the State of Illinois; that said registered bond funds were raised for paying principal and interest of registered bonds due from counties, cities, towns, townships, school districts and other municipalities, and were payable to people other than the State of Illinois; that said registered bond funds belonged to and were the property of the respective municipalities from which they had been collected, and not the property of the State of Illinois, and were at no time in the treasury of said State but were private funds belonging to the various

municipalities; that the suit was not for the recovery of money belonging to the People of the State of Illinois but was for the benefit of the municipalities, and concludes by setting up and relying on the five year statute of limitations.

The tenth plea is, in principle, substantially like the ninth. The twelfth is similar to the ninth and tenth, except that by oversight no period of limitation is named.

The eleventh plea in substance averred that said registered bond funds were at all times the property of the respective municipalities from which they had been collected, and were not the property of the People of the State of Illinois and were never in the treasury of the said State; that said funds were in the custody of said Henry Wulff for the payment of principal and interest of said registered bonds and for the payment of the ordinary and necessary costs of the collection and disbursement of said funds, to be estimated and ascertained by the Auditor and Treasurer of the State of Illinois. The plea further avers that Henry Wulff, not as Treasurer but personally, paid from said registered bond funds the ordinary and necessary costs incurred in their collection and disbursement, which costs had before that time been estimated and ascertained by said Auditor and State Treasurer according to law, and that the moneys paid for said costs and expenses are the same moneys in the declaration named and demanded.

The fourteenth, fifteenth, sixteenth and seventeenth pleas were pleas of contemporaneous construction. The fourteenth averred that the moneys sued for were charged to have come into the possession of Wulff, as Treasurer, as registered bond funds by virtue of acts of the legislature of 1865, 1877 and 1879; that said moneys were not taxes and revenue raised for the People of the State of Illinois but were funds raised for the payment of registered bonds of various municipalities, together with the cost to the State of the collection and disbursement of said funds; that since the passage of the acts of the legislature mentioned, the sev-

eral State Treasurers and State Auditors of Illinois, they being administrative officers of said State, so construed and carried into effect the statutes relating to the payment of costs and expenses in the collection and disbursement of registered bond funds that they paid from said funds, annually, to said officers, an amount estimated by said officers as necessary for the payment of the costs and expenses in the collection and disbursement of the said registered bond funds, and that the money in the various counts of the declaration mentioned were paid by Wulff as the ordinary costs and expenses incurred in the collection and disbursement of said funds as estimated by the State Treasurer and State Auditor, the same as had been theretofore paid by the various administrative officers of said State since the passage of the acts of the legislature mentioned, and that said Wulff had paid the amount in the declaration mentioned in full payment and satisfaction of said costs and expenses.

The fifteenth plea is substantially the same as the fourteenth, except it avers that in accordance with the construction placed upon the acts of the legislature mentioned, relating to the collection and disbursement of the registered bond funds by the State Treasurers and State Auditors of Illinois, the sums of money mentioned in the declaration were held and retained by the said Wulff as the ordinary costs and expenses of the collection and disbursement of the registered bond funds as estimated by the State Treasurers and State Auditors, the same as had been theretofore done by the various administrative officers of the State of Illinois since the passage of the acts relating to the said funds.

The sixteenth plea avers that after the passage of the acts of the legislature referred to, the State Treasurers and State Auditors of the State of Illinois, acting under their construction of the acts of the legislature, kept an account of the payment of the costs and expenses of collecting and disbursing the registered bond funds and spread said accounts upon the records of the said offices during each year,

and did at stated intervals, as required by law, make public report of their action in that behalf, whereby the construction placed upon the acts of the legislature by said officers became known to the executive and legislative departments of the State and was by them ratified and approved; that the moneys mentioned in the declaration were held and retained by said Wulff as the ordinary costs and expenses, as estimated by the Treasurer and Auditor, in the collection and disbursement of the registered bond funds, the same as had been theretofore held and retained by the various administrative officers of said State since the passage of the acts of the legislature referred to.

The seventeenth plea is substantially the same as the sixteenth, except that it avers Wulff paid out the money in the declaration mentioned as costs and expenses of collecting and disbursing the registered bond funds in accordance with the estimate made by the Treasurer and Auditor and in accordance with their construction of the acts of the legislature relating to the registered bond funds.

H. J. HAMLIN, JAMES M. GRAHAM, and HUGH CREA, for plaintiff in error:

The moneys paid into the registered bond fund by the various municipalities were not moneys of the State, but remained the moneys of such municipalities for the purposes contemplated by the several acts of the legislature in question. *Dunnovan* v. *Green,* 57 Ill. 63; *People* v. *Lippincott,* 65 id. 548; *Decker* v. *Hughes,* 68 id. 33; *People* v. *Gillespie,* 47 Ill. App. 522.

The registered bond funds are payable through the intervention of the Auditor and Treasurer, without special appropriations by the legislature. Const. of 1870, art. 4, sec. 18.

The Treasurer was entitled to retain out of the registered bond funds in his hands the necessary expenditures he had made in the matter of receiving and disbursing such

funds. *People* v. *Foster,* 133 Ill. 496; *Schuyler County* v. *Bogue,* 38 Ill. App. 48; *Windmiller* v. *People,* 78 id. 273; *Cook County* v. *Gilbert,* 146 Ill. 272; *County of LaSalle* v. *Milligan,* 143 id. 321; *People* v. *Rea,* 185 id. 633.

The contract of sureties will not be extended by implication. Whittemore, as surety for Wulff, the State Treasurer, should not be held liable for misappropriation by the latter of money not part of the State revenues, if such misappropriation occurred. *Keily* v. *Sangamon County,* 58 Ill. 494; *People* v. *Moon,* 3 Scam. 123; *People* v. *Toomey,* 122 Ill. 308; *People* v. *Foster,* 133 id. 496.

The contemporaneous construction of the statutes in question by the administrative officers of the State and by the legislature for nearly forty years should defeat a recovery against the surety in this case. *Scanlan* v. *Childs,* 33 Wis. 666; *United States* v. *Gilmore,* 8 Wall. 330; *Harrington* v. *Smith,* 28 Wis. 68; *Insurance Co.* v. *Hoge,* 21 How. 36; *Lawson on Usages and Customs,* 15, 16; *Cook County* v. *Healy,* 222 Ill. 310; *Nye* v. *Foreman,* 215 id. 285.

The Statute of Limitations of five years is pleaded in this case. If Wulff did not lawfully retain the money sued for, then such money is the money of the various municipalities. As no public rights or interests are involved as between Wulff and such municipalities, the Statute of Limitations so pleaded is a complete defense to this suit against the surety. *Governor* v. *Woodworth,* 63 Ill. 258; *People* v. *Town of Oran,* 121 id. 654; *Hayward* v. *Gunn,* 82 id. 388; *County of Piatt* v. *Goodell,* 97 id. 88; *Ramsay* v. *County of Clinton,* 92 id. 225; *State* v. *Percell,* 16 Tex. 305; Sedgwick on Construction of Statutes and Const. Law, (2d ed.) 84; *United States* v. *Beebe,* 17 Fed. Rep. 40.

W. H. STEAD, Attorney General, (EDGAR ELDREDGE, and B. F. LINCOLN, of counsel,) for the People:

The registered bond funds, including the amount collected as the costs to the State, were lawfully in the State

treasury in the custody of the State, and in the possession of Wulff, as Treasurer. Hurd's Stat. chap. 113, secs. 5, 6.

Whether the bond funds belonged to the State or to the various municipalities, they were in the possession of Wulff, as Treasurer, as provided by law, and it was his duty, as Treasurer, to safely keep them. Hurd's Stat. chap. 130, sec. 7; *Railway Co.* v. *Owens,* 86 Minn, 188; *Marquette Co.* v. *Ward,* 50 Mich. 174.

Wulff's salary as Treasurer was fixed by law. It covered all of his personal services, of every kind and nature. He could not draw a cent in addition thereto, either out of the bond fund or any other fund. Const. art. 5, sec. 23, and art. 4, sec. 19; Hurd's Stat. chap. 53, secs. 1, 2; *Kilgore* v. *People,* 76 Ill. 548; *Brissenden* v. *Clay County,* 161 id. 216; *Coles County* v. *Messer,* 195 id. 540; *Parker* v. *Richland County,* 214 id. 165; *Foote* v. *Lake County,* 206 id. 185.

Wulff's acts in procuring, countersigning and paying the warrants were official acts, and the sureties on his bond are liable in this action. *Spindler* v. *People,* 154 Ill. 637; *Campbell* v. *People,* 154 id. 595; 52 Ill. App. 338; *Jones* v. *Commissioners,* 57 Ohio St. 206; *Armington* v. *State,* 45 Ind. 13; *People* v. *Treadway,* 17 Mich. 484.

The Statute of Limitations does not run against the State in favor of the sureties on Wulff's bond. *State* v. *Brown,* 1 Scam. 106; *People* v. *Brown,* 67 Ill. 435; *Catlett* v. *People,* 151 id. 23; *McPhail* v. *People,* 160 id. 81; *People* v. *Gary,* 196 id. 327.

When money is fraudulently or wrongfully obtained or unlawfully retained, interest is chargeable. *County of LaSalle* v. *Simmons,* 5 Gilm. 520; *Chapman* v. *Burt,* 77 Ill. 342; *Magner* v. *Knowles,* 67 id. 326; *Vider* v. *Chicago,* 164 id. 354.

Contemporaneous construction can have no place where the intention is plain. In cases of doubtful construction, only, is it admissible. *Jarrot* v. *Jarrot,* 2 Gilm. 11; *Burke* v. *Snively,* 208 Ill. 356.

Mr. JUSTICE FARMER delivered the opinion of the court:

It will be seen from the pleas above set out in substance, that the defenses sought to be made are, substantially, that the moneys sued for were not the moneys and property of the State; that said moneys came into the hands of Wulff as registered bond funds and not as taxes and revenues raised for and belonging to the people of the State, but that said moneys belonged to the various municipalities from which they had been collected; that Wulff had a lawful right to retain or pay to himself, out of said fund, the costs and expenses of its collection and disbursement; that by contemporaneous construction of the statutes relating to the registered bond funds by the administrative and executive officers of the State and by the legislature for a long period of years, Wulff had a right to receive and retain the amount annually estimated to cover the costs and expenses of collecting and disbursing the registered bond funds, the same as had been done by his predecessors in office, and that no recovery can therefore be had against plaintiff in error; also, that the suit is not for the recovery of money in which the public is interested, and therefore the action is barred by the five year statute of limitations, and that if, as alleged in the pleas, the moneys sued for were not State revenues but belonged to the various municipalities, then plaintiff in error, as surety for Wulff, as State Treasurer, could not be liable for a misappropriation of said funds.

It is necessary to an understanding of plaintiff in error's contention that we set out the substance of the statutes involved relating to the registered bond funds. They are sections 5, 6 and 7 of chapter 113, (Hurd's Stat. 1905, p. 1553,) entitled "Railroad and Improvement Aid Bonds." The original act relating to this subject was passed February 13, 1865. It was amended by the act of 1877 and again by the act of 1879. There are some differences between the original and present acts, but these differences do not re-

late to the portions of said act involved in this controversy. The provisions of said act, as it now exists, which are involved in this action are not materially different from the original act of 1865. Section 5 provides that when the bonds of any of the municipalities mentioned shall be registered, the Auditor shall annually ascertain the amount of principal and interest due and to accrue for the current year on such bonds, and shall ascertain the rate percentum upon the valuation of the property of the municipalities necessary to pay said interest or said interest and principal, "together with the ordinary cost to the State of the collection and disbursement of the same, to be estimated by the Auditor and State Treasurer." He is then required to make and forward to the proper officer of the municipality a certificate setting forth the estimated percentum required, "and the said percentum shall thereupon be deemed added to and a part of the percentum which is or may be levied, or provided by law, for the purposes of State revenue, and shall be so treated by such clerk, officer or authority in making such estimates and books for the collection of State taxes; and the said taxes shall be collected with the State taxes, and all laws relating to the State revenue shall apply thereto, except as herein otherwise provided." By a proviso to said section 5 the county collector is authorized, before settling with the State Treasurer, to pay coupons for interest due, and to pay from any surplus not required for the payment of interest the principal of any registered bond presented to him for payment, and in his settlement with the State Treasurer the county collector is allowed credit for such payments. Section 6 provides that "the State shall be deemed the custodian only of the tax so collected, and shall not be deemed, in any manner, liable on account of such bonds, or other evidences of indebtedness; but the tax and funds so collected shall be deemed pledged and appropriated to the payment of the principal and interest of the registered bonds, and evidences of indebtedness," etc. Section 7 provides:

"The State may, out of such fund, first retain or satisfy the ordinary cost to the State, of the collection and disbursement thereof; and in case of the non-presentment of any such bond, or evidence of indebtedness, * * * at the times and when and where the interest on the State debt is or may be paid, then, on the beginning of the next year, the moneys by reason thereof undisbursed, together with any surplus for any cause remaining, shall be carried to the fund of such county, city, town, township, school district or other municipal corporation of the current or ensuing year, and be considered by the Auditor in making his next estimate for taxation therein for such year under this act, and shall be applied accordingly."

It is contended by plaintiff in error that under these provisions of the statute the money paid into the registered bond fund belonged to the various municipalities from which said fund was collected and the State had no interest in or title thereto, and that if Wulff was not entitled to the moneys sued for, this suit cannot be maintained because the moneys belonged to the various municipalities whose names are attached to the warrant filed with the declaration. In *Dunnovan* v. *Green*, 57 Ill. 63, it was contended that the registered bond fund tax was in violation of the constitution of 1848, which prohibited the State from in any manner giving its credit to or in aid of any individual, association or corporation, and it was there held that such tax was not a State tax or revenue and the constitutionality of the act was sustained. A distinction, however, must be made between the tax collected for the payment of principal and interest of registered bonds and that collected to compensate the State for costs incurred by it in collecting and disbursing the fund for the payment of principal and interest of said bonds. This cost to the State is required, as will be seen by section 5, to be estimated by the Auditor and State Treasurer, and becomes a part of the rate percentum certified to the local or municipal authorities to be levied and collected as taxes.

Section 7 authorizes the State to retain out of the funds collected the ordinary cost to the State of the collection and disbursement of said fund. Whether the State has such title to or interest in the fund collected for the payment of principal and interest of registered bonds as would authorize it to maintain a suit for the recovery thereof is not involved in this record, and a determination of that question is unnecessary to a decision of this case. This suit is based on the right claimed by the State to recover moneys alleged to have been received by Wulff, as Treasurer, which were raised by taxation and paid to said Wulff, as such Treasurer, as the ordinary cost to the State of collecting and disbursing the fund for the payment of principal and interest of registered bonds. Whether this portion of said fund be denominated State revenue or called by some other name, by the plain and unequivocal terms of the statute it belonged to the State.

That the State may lawfully exercise the powers conferred by the act of the legislature referred to, with reference to the registering and payment of municipal bonds, is not denied. Neither is it questioned that it may collect and receive from the municipalities it is aiding, the ordinary cost and expense incurred by it for the service rendered. As soon as the amount which has been determined by the Auditor and Treasurer to be necessary to pay the State its cost for collecting and disbursing the registered bond fund has been received by the Treasurer it becomes the money of the State, and can only be paid out upon an appropriation made by the legislature for that purpose. "No money shall be drawn from the treasury except in pursuance of an appropriation made by law and on the presentation of a warrant issued by the Auditor thereon." (Const. of 1870, art. 4, sec. 17.)

It is not controverted that the money received by the State Treasurer for the payment of principal and interest of registered bonds could lawfully be paid to the holders of

227—30

the said bonds without the requirement of an appropriation
for that purpose, and it is insisted by plaintiff in error that
it necessarily follows the moneys received as costs and ex-
penses of the State for collecting and disbursing the fund
may also be paid out without an appropriation. We think,
as before stated, that there is a substantial difference be-
tween the two funds. One belongs to the State for the ser-
vice rendered by it for the municipalities. As to the other,
the State is the custodian for its payment to the bond own-
ers. As to one fund the title of the State is absolute; as
to the other it is qualified. As to the one fund the money
goes into the State treasury for the benefit of the State and
cannot be withdrawn from the treasury unless authorized
by an appropriation, while as to the other the money is re-
ceived by the Treasurer for the purpose of paying it to the
persons to whom it is properly due and for whom it was
collected, and no appropriation is required to authorize such
payment. We do not think the act of 1874, relating to the
application of the surplus of any registered bond fund, or
the act of 1883, making provision for the refunding of any
surplus fund, has any application to the fund in issue in this
case, for the reason that this is not a suit for the benefit of
any municipality to recover a surplus. Section 7 of chap-
ter 130 (Hurd's Stat. 1905, p. 1943,) reads: "The State
Treasurer shall receive the revenues and all other public
moneys of the State, and all moneys authorized by law to
be paid to him, and safely keep the same." The moneys
sued for in this case belonged to the State, and were paid
to Wulff, as Treasurer of said State, by authority of law,
and it was his duty to safely keep said fund and not ap-
propriate or convert it to his own use.

Some of the pleas allege that the moneys sued for were
taken by Wulff to re-pay to himself the actual cost he had
been put to in the collection and disbursement of the reg-
istered bond funds. It is contended by the plaintiff in error
that if Wulff paid out of his own private means the cost of

collecting and disbursing this fund, he had a right to retain or pay to himself, out of the treasury, the amount so expended without any appropriation having been made for that purpose. We cannot agree with this position of plaintiff in error. Section 23 of article 5 of the constitution confers upon the legislature authority to fix the salary of the State Treasurer and prohibits it being increased or diminished during the official term of such Treasurer, and also prohibits such officer from receiving to his own use "any fees, costs, perquisites of office, or other compensation." Said section requires such officer to pay all fees that may be collected for any service performed by him, into the State treasury. By act of the legislature in 1872 the annual salary of the State Treasurer was fixed at $3500, "in lieu of all other salary, fees, perquisite, benefit or compensation, in any form whatsoever." Said act also required said officer to pay all fees collected by him, as such officer, into the State treasury as revenue. These provisions of the constitution and the statute so plainly prohibit the State Treasurer from receiving any other compensation, directly or indirectly, than the annual salary of $3500, as to leave no room for discussion or debate upon this question, and it is not claimed that Wulff was entitled to the moneys sued for as additional personal compensation.

It is contended, as before stated, that if Wulff advanced the costs and expenses to the State of collecting and disbursing the registered bond funds he was entitled to retain or draw out of the treasury an amount sufficient to reimburse him for such expenditures. This position is untenable, for the reason that Wulff, as State Treasurer, had no right to incur or pay any expenses of his office beyond what had been provided for by appropriation acts of the legislature. Section 18 of article 4 of the constitution requires the General Assembly to provide for all the appropriations necessary for the ordinary and contingent expenses of the government. In pursuance of said provision of the constitution,

the General Assembly, by its appropriation act of 1893, which covered a portion of the term of office of Wulff as Treasurer, appropriated for the use of the Treasurer in the conduct of the business of his office, for clerk hire, $4000 per annum; stenographer and typewriter, $750 per annum; watchmen, $3200 per annum; messenger and clerk, $800 per annum; and for repairs, express charges, postage, telegraphing and other necessary and incidental expenses, not exceeding $1000 per annum. By the appropriation act of 1895, which covered the residue of the term of office of Wulff as Treasurer, the General Assembly appropriated for the use of the Treasurer, for clerk hire, $7500 per annum; for watchmen, $3200 per annum; messenger, $800 per annum; repairs, express charges, postage, telegraphing, etc., a sum not exceeding $1000 per annum. The services performed by the Treasurer in connection with the collection and disbursement of the registered bond funds were a part of the duties of the office of State Treasurer required to be performed by the person holding that office. The expenses attendant upon the discharge of those duties are not by law distinguished from or placed upon a different basis from the other expenses incurred in the discharge of the duties of the office of Treasurer. All expenses for the conduct of said office are provided for by the appropriation acts of the General Assembly and limited to the amount by the said acts appropriated.

The principles here involved are the same as those announced in *Hughes* v. *People,* 82 Ill. 78, *Daggett* v. *Ford County,* 99 id. 334, *Wheelock* v. *People,* 84 id. 551, *Jennings* v. *Fayette County,* 97 id. 419, and *Marion County* v. *Lear,* 108 id. 343. Those cases related to duties and liabilities of county officers, but in principle they are analogous and applicable to the questions here involved. Section 10 of article 10 of the constitution makes it the duty of the county board to fix the compensation of all county officers, with the amount of their necessary clerk hire, stationery, fuel and

other expenses. The cases above cited hold that when an amount for clerk hire and expenses has been fixed by the county board, the officer is not entitled to receive from the county anything for money actually expended for clerk hire in excess of the amount allowed him by the county board for that purpose. In the *Daggett case, supra,* it was held that the exclusive power and authority to fix and determine the amount of necessary clerk hire and other expenses was lodged by the constitution in the county board, and it was said (p. 342) : "When the county board has thus fixed an officer's compensation, we conceive that that is all to which he is entitled. It has been fixed by the authority which the constitution has appointed to fix it. Although it is the amount of their necessary clerk hire, etc., which the county board is to fix, it is for the board to decide what amount is necessary. It is the amount necessary which they are to fix, and it is their duty to allow all that is necessary. Still, they are to fix the amount which is necessary, and of necessity are to determine what is necessary. And when they have acted and fixed what in their judgment is the necessary amount for clerk hire, etc., we do not see that under the constitution there is any other power which has authority to increase it. The power of fixing the amount of necessary clerk hire, etc., is devolved by the constitution on the county board, as a fair and impartial tribunal, and it is to be supposed that they will perform the duty in good faith, as it rests upon them under the constitution. Should it be found at any time that the board had committed an error in judgment and not allowed an amount sufficient for necessary clerk hire, etc., the construction which we have heretofore adopted, that the amount once fixed for necessary clerk hire, etc., when it is fixed separate from the allowance for personal services, is subject to be changed from time to time during the term of office, as the board may see fit, will enable the board to afford any suitable relief in this regard, and it may be expected that this will be sufficient for the avoidance

of any serious injustice being done to officers in any under-estimating by the county board of the necessary expenses of their offices." In the case at bar, power to determine and fix the necessary clerk hire and other expenses of the office of State Treasurer is by the constitution conferred upon the General Assembly. This power was exercised by the appropriation acts above referred to, and Wulff, as State Treasurer, had no authority to incur or pay any expenses of his office beyond the amounts fixed in said acts. There are cases holding that where the county board has failed to fix the necessary clerk hire, etc., of a county officer, such officer is entitled to receive the expenses necessarily incurred and paid out. But those cases can have no application to this case, for the reason that here the General Assembly did fix the amount of expense to be incurred and paid out by Wulff as Treasurer of said State of Illinois.

It follows, therefore, that the circuit court properly sustained the demurrer to pleas 2, 5, 6, 8 and 11.

It is next contended by plaintiff in error that the Auditor and State Treasurer, who were administrative officers, had for a period of nearly forty years construed the statutes relating to registered bond funds to authorize the Treasurer to retain out of, or pay to himself from the treasury, the costs and expenses incurred in the collection and disbursement of the registered bond funds, and that this construction was known to and ratified by the executive officers and the legislature of the State of Illinois. This question is presented by the fourteenth, fifteenth, sixteenth and seventeenth pleas, called "pleas of contemporaneous construction." The Attorney General contends, on behalf of defendant in error, that no issue of fact is tendered by these pleas but an issue of law, and that the doctrine sought to be invoked by the pleas as a defense is not the proper subject matter of special pleas. But even if such a defense can ever be the subject matter of special pleas in any case, the pleas here filed presented no defense to the cause of action. The aid

of contemporaneous construction can only be invoked where the language of the statute is ambiguous or doubtful. It can have no application where the language of the act and the intent of the legislature are plain. (*Jarrot* v. *Jarrot, 2* Gilm. 1; *Burke* v. *Snively,* 208 Ill. 328; 2 Lewis' Sutherland on Statutory Construction, sec. 472.) In section 473 of the authority last cited it is said: "Long usage is of no avail against a plain statute; it can be binding only as the interpreter of a doubtful law and as affording a contemporary exposition." In section 474 the same author says: "If the meaning of a statute is clear and unambiguous, a practical construction inconsistent with that meaning will have no weight and will not be followed. A practical construction will not be followed when it would defeat the obvious purpose of the statute." The author concludes this section with this quotation from *Commonwealth* v. *Railroad Co.* 95 Ky. 60: "If the language of an act be certain, its object can never be frustrated by any amount of contemporaneous interpretation, no matter how consistent or how widely adopted it may have been."

The language of the statute here involved is so plain as to not require the aid of interpretation or construction. It is inconceivable how the statutes relating to the registered bond funds could be construed to authorize the payment to the State Treasurer, and the retention by him, under any circumstances, of the cost to the State of collecting and disbursing said funds. The plain language of the statute is, that in addition to the amount necessary to pay the principal and interest of the bonds there shall be estimated by the Auditor and State Treasurer, and collected, "the ordinary cost to the State" incurred in the collection and disbursement of said fund. The act further authorizes the State, out of the registered bond fund collected, to "first retain or satisfy the ordinary cost to the State of the collection and disbursement thereof." By the terms of the act the taxes collected to pay the principal and interest of the registered

bonds are deemed pledged and appropriated for their payment, but the cost of collection and disbursement belongs to the State. In no part of the act do we find anything doubtful or ambiguous as to the ownership of the moneys collected for the cost to the State of collecting and disbursing the registered bond fund. Said act is so plain and unequivocal as to be incapable of being reasonably construed to authorize the person holding the office of Treasurer to retain the fund collected as costs and expenses to the State.

In *United States* v. *Graham,* 110 U. S. 219, on the subject of contemporaneous practical construction, the Supreme Court said: "If there were ambiguity or doubt, then such a practice, begun so early and continued so long, would be in the highest degree persuasive, if not absolutely controlling in its effect. But with language clear and precise and with its meaning evident there is no room for construction, and consequently no need of anything to give it aid. The cases to this effect are numerous." The same court, in *Studebaker* v. *Perry,* 184 U. S. 258, reiterated the same rule and quoted section 69 from Cooley on Constitutional Limitations, which reads, in part, as follows: "When, however, no ambiguity or doubt appears in the law, we think the same rule obtains here as in other cases, that the court should confine its attention to the law, and not allow intrinsic circumstances to introduce a difficulty where the language is plain. To allow force to a practical construction in such a case would be to suffer manifest perversions to defeat the evident purpose of the law-maker." This rule has been repeatedly announced and never departed from in many other decisions of the Supreme Court of the United States and has been consistently followed by this court.

Much reliance is placed by plaintiff in error upon *Nye* v. *Foreman,* 215 Ill. 285, and *County of Cook* v. *Healy,* 222 id. 310; but those cases are not in conflict with the previous decisions of this court nor with the great weight of authority as announced by other courts of last resort and as

laid down by text writers.   In the *Nye case, supra,* it was held that contemporaneous, long, uniform and practical construction placed upon a statutory provision by the legislative department and by the officers charged with the duty of applying and enforcing the provisions of the statute would be given great weight by the judiciary, and would, in general, control, "whenever the question is in a degree doubtful or open to reasonable debate," and the case was held to be a proper one for the application of the doctrine of contemporaneous and practical construction.   The *Healy case, supra,* involved the construction of a constitutional provision relating to the compensation of the State's attorney of Cook county.   It was there held that on account of the ambiguous terms and uncertain meaning of the language of said constitutional provision, the practical construction placed upon it for a long term of years by the State's attorney and other officers connected with the administration of justice was applicable, but it was said, on page 317: "If it could be said that the language of the constitution was clear and free from any doubt, a contrary legislative and administrative construction would have no weight."   In discussing the weight and effect to be given by courts to contemporaneous practical construction, the Supreme Court of the United States, by Mr. Justice Story, said in *United States* v. *Dixon,* 15 Pet. 158: "But it is not to be forgotten that ours is a government of laws and not of men, and that the judicial department has imposed upon it, by the constitution, the solemn duty to interpret the laws in the last resort, and however disagreeable that duty may be in cases where its own judgment shall differ from that of other high functionaries, it is not at liberty to surrender or to waive it."

The circuit court committed no error in sustaining the demurrer to the fourteenth, fifteenth, sixteenth and seventeenth pleas.

The pleas of the Statute of Limitations are based upon the contention that the moneys sued for were not the property of the State of Illinois but belonged to the various municipalities from which they had been collected, and that no public right or interest is involved which prevented the running of the statute against such municipalities. It is not contended the Statute of Limitations would be a good plea if the money sued for belonged to the State. We have held that it did belong to the State, and this court has frequently held that unless specially named the State is not embraced within the Statute of Limitations. (*People* v. *Brown,* 67 Ill. 435; *Catlett* v. *People,* 151 id. 16; *People* v. *Gary,* 196 id. 310.) The demurrer was properly sustained to the pleas of the Statute of Limitations.

It follows from what we have said that the sureties on the bond of Wulff, as Treasurer, would be liable for his misappropriation or conversion of the moneys sued for.

The circuit court allowed interest on the amount received by Wulff on the warrant described in the declaration from the date of its payment, January 29, 1896, and it is insisted this was erroneous. At common law, in the absence of an agreement to pay interest it could not be recovered. (*Fowler* v. *Harts,* 149 Ill. 592; *Madison County* v. *Bartlett,* 1 Scam. 67.) By section 2 of our statute in relation to interest, a creditor is allowed interest on moneys "after they become due on any bond, bill, promissory note or other instrument of writing; on money lent or advanced for the use of another; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment." In addition to the cases where interest is provided for by statute it has been held that interest will be allowed as a penalty where money has been secured and retained by a tortious act and where it has been

fraudulently taken and its conversion concealed. This case is not embraced in the class of cases where interest is allowed by statute. Although Wulff received the money sued for nearly ten years before suit was brought, it does not appear from this record that any demand for payment was ever made by the State before this action was commenced. The fact that he had the money all that time was not concealed by him, and it is not claimed he did anything that caused the State to delay demanding payment or suing for the recovery of the money. This is not unreasonable and vexatious delay within the meaning of the statute. "To make the delay both unreasonable and vexatious, the debtor must in some way have thrown obstacles in the way of the collection of the demand, or by some circumvention or management of his own have induced the creditor to prolong taking proceedings to collect the debt longer than he would otherwise have done." (*Hitt* v. *Allen,* 13 Ill. 592.) The indebtedness did not result from the commission of a tort nor was the fact of the taking and conversion of the money fraudulently concealed. The defense set up by a number of the pleas was, that Wulff collected and appropriated the money because he claimed he had a right to it,—that it belonged to him. We have held this claim was not well founded; but if the money was taken and converted under the honest belief on his part that he was entitled to it, which was one of the defenses sought to be made by pleas, no interest could be allowed until after demand made for the payment. The judgment was rendered on the declaration. There is no averment of any demand in the declaration nor of any facts that would justify the allowance of interest before the commencement of the suit. In *Cassady* v. *Trustees of Schools,* 105 Ill. 560, which was a suit on the official bond of a school treasurer, it was held that where a public officer appropriates and converts to his own use moneys held in his official capacity, and refuses, on demand, to pay the same over to the proper party, in a suit to recover on the bond

interest is allowable from the time of the conversion. It is apparent from the facts in that case, and from the opinion, that the time of conversion referred to was the time when demand was made. The demand was made by the defaulting treasurer's successor in office. To support the proposition there laid down, the court cites *Stern* v. *People,* 102 Ill. 540, where the court quotes with approval the rule announced in *United States* v. *Curtis,* 100 U. S. 119, that in a suit on the bond of a paymaster in the army, no demand having been made before bringing suit, interest could only be allowed from the date of the service of the writ. That case was cited with approval in *United States* v. *Denvir,* 106 U. S. 36. We are of opinion that as no demand for payment was made on Wulff before the suit was begun, interest should have been allowed only from the date the writ was served, which was December 22, 1905.

There being no other error in the record, and the sum received and appropriated by Wulff being undisputed, it will not be necessary to remand the case.

The death, since this cause was submitted, of Floyd K. Whittemore, has been suggested and his executors substituted as plaintiffs in error.

Judgment will be entered in this court for the sum received by Wulff on the warrant described, with five per cent interest thereon from December 22, 1905, amounting in all to $4579, to be paid in due course of administration.

*Affirmed in part and reversed in part.*

Mr. JUSTICE CARTER, dissenting:

I do not concur in this decision. If the determination of the case depended upon the language of the constitution and the statute itself there could be little doubt that the conclusion reached by the court was correct; but other considerations enter into this decision. The statutory and constitutional provisions now under consideration differ somewhat from the wording of the statutes and the provi-

sions of the constitution passed upon in *Nye* v. *Foreman,* 215 Ill. 285, and *Cook County* v. *Healy,* 222 id. 310, but here, as there, the public officials concerned with the enactment and enforcement of the statute have by contemporaneous, long, uniform and practical construction accepted and acted upon the law as having a definite and particular mean-. ing; here, as there, great injury and injustice will follow a change in such construction and meaning. All the facts and circumstances indicate that the construction placed upon this statute during forty years by those charged with its enforcement has been in good faith, with the full belief that not only the letter but the spirit of the law was being observed. In some jurisdictions long continued, contemporaneous and practical construction by the legislative and executive departments has been followed, even though the courts believed the language under consideration clear and unambiguous. (8 Cyc. 737; 26 Am. & Eng. Ency. of Law,—2d ed.— 634.) This court has stated that such construction will govern only where the language of the statute is doubtful, yet an examination of the decisions in this State will disclose that in almost every instance such contemporaneous, uniform and long continued construction by public officials in the execution of the law has been followed by this court. From the time this statute was enacted, in 1865, the construction placed upon it by State Treasurers, State Auditors and other public officials has never been challenged by any citizen or any department of the State government until the institution of these proceedings.

While the lack of clearness in the statutory and constitutional provisions involved in the *Nye* and *Healy cases* was, perhaps, more marked than in this case, yet there is, in my judgment, sufficient ambiguity in the statute here under consideration to call for the application of the rule as to long continued and contemporaneous construction. The underlying principles invoked in those cases apply to this case and should control in its decision.