ELSTERMEYER v. CITY OF CHEYENNE ET AL.

(No. 2198; August 19, 1941; 116 Pac. (2d) 231)

For the appellants, there was a brief by *Walter Q. Phelan* and *Edwin W. Baron* of Cheyenne, and oral argument by *Mr. Phelan.*

For the respondent, there was a brief and oral argument by *Ray E. Lee* of Cheyenne.

RINER, Chief Justice.

This is a direct appeal proceeding brought by the City of Cheyenne, a municipal corporation, and Edwin W. Baron, to review a judgment of the district court of Laramie County given in a cause pending in said court wherein Ida Elstermeyer was plaintiff and the parties above named were defendants. The facts required to be set forth in order to understand the matter may be briefly summarized as follows: The plaintiff, whose name at that time was Ida Anderson, purchased Lot 8 in Block 303 of the City of Cheyenne some 38

years before August 8, 1940, the date when the case at bar was tried in the court aforesaid. Her husband died, and in August, 1917, she remarried, her second husband's name being William Elstermeyer. However, the property aforesaid was allowed to stand on the Laramie County records in the name of Ida Anderson.

On September 29, 1925, the City of Cheyenne aforesaid filed a lien upon said property for certain street improvements made by it adjoining this land and in due course instituted a foreclosure suit in said court to recover the amount claimed by the defendant municipality to be due it on account of the assessment and lien proceedings just mentioned. This foreclosure suit was begun September 28, 1935, and the defendant, so far as here material, was designated as one "Ida Elestermeyer". Neither Ida Anderson nor Ida Elstermeyer were named as parties. Meanwhile, some time in the year 1928 or 1929, the plaintiff had removed from the State of Wyoming to the State of California and became a resident there in the city of Santa Ana, her street address being 912 South Cypress Avenue therein.

Constructive service upon the plaintiff was accordingly resorted to by the city aforesaid in the foreclosure suit above mentioned. Among the now pertinent sections relating to such service are the third provision of Section 89-701, R. S. 1931, reading:

"Actions for the following causes must be brought in the county in which the subject of the action is situate, except as provided in the next two sections:
* * *
3. For the sale of real property under a mortgage, lien or other incumbrance or charge;"

Section 89-817, subdivision "1" and "4"

"Service by publication may be had in either of the following cases:
1. In actions under the first three sections of article 7

of this chapter, when the defendant resides out of the state, or his residence cannot be ascertained;

\* \* \*

4. In actions which relate to, or the subject of which is real or personal property in this state, when a defendant has or claims a lien thereon, or an actual or contingent interest therein, or the relief demanded consists wholly or partly in excluding him from any interest therein, and such defendant is a non-resident of the state, or a foreign corporation, or his place of residence cannot be ascertained;"

Section 89-819, whose language is:

"Before service by publication can be made, an affidavit of the party, his agent or attorney, must be filed showing that service of a summons cannot be made within this state, on the defendant to be served by publication, and that the case is one of those mentioned in § 89-817; and when such affidavit is filed, the party may proceed to make service by publication,"

Section 89-818, which reads:

"In any case in which service by publication is made under the provisions of the preceding section, when the residence of a defendant is known, it must be stated in the publication; immediately after the first publication the party making the service shall deliver to the clerk copies of the publication, with the proper postage, and the clerk shall mail a copy to each defendant, directed to his residence named therein, and make an entry thereon, on the appearance docket; and in all other cases the party who makes the service, his agent or attorney, shall before the hearing, make and file an affidavit that the residence of the defendant is unknown, and cannot with reasonable diligence be ascertained,"

and Section 89-820, prescribing the manner of publication in this wise:

"The publication must be made for four consecutive weeks in a newspaper published in the county where the petition is filed; or if there is no newspaper published in the county, then in a newspaper published in

this state, and of general circulation in such county; if it be made in a daily newspaper, one insertion a week shall be sufficient; and it must contain a summary statement of the object and prayer of the petition, mention the court wherein it is filed, and notify the person or persons thus to be served when they are required to answer."

Undertaking to comply with these statutes, counsel for the City of Cheyenne filed an affidavit which, omitting formal parts and parts thereof not pertinent here, is as follows:

"that service of a summons cannot be made within the State of Wyoming on the defendants hereinafter named, who must be served by publication; that this is one of those cases mentioned in Section 89-817, Wyoming Revised Statutes, 1931, sub-section 4, being an action which relates to, or the subject of which is real property in Wyoming, when a defendant has, or claims a lien thereon, or an actual or contingent interest therein, or the relief demanded consists wholly or partly in excluding him from any interest therein, and such defendant is a non-resident of the State; that to the best of the knowledge of this affiant, all of the defendants who must be served by publication are non-residents of Wyoming, their names and last known addresses, as well as their property involved herein being as follows:
* * *
Ida Elestermeyer, 916 West 21st Street, Cheyenne, Wyoming."

With similar omissions, the notice published in the newspaper was addressed to "Ida Elestermeyer, 916 West 21st Street", and was to this effect:

"You, and each of you are hereby notified that the City of Cheyenne, a Municipal Corporation, as plaintiff in the District Court of Laramie County, Wyoming, has instituted action against you to foreclose the lien for curb and gutter improvements in District No. 7, with interest and costs by reason of default in payment of assessments thereon charged against the property

above described. As defendants, you are notified that unless you answer the petition filed in said action in said court on or before the 26th day of February, 1938, judgment will be taken as demanded in said petition."

Copy of this publication was mailed to "Ida Elestermeyer", but none to Ida "Anderson" or Ida "Elstermeyer". A summons and also an alias summons were issued. They were returned unserved, so far as Ida "Elstermeyer" is concerned, no personal service being obtained upon her.

In this connection it may also be observed that there was no affidavit at all filed showing "reasonable diligence" in ascertaining the residence of the owner of the property aforesaid, Ida Elstermeyer, as required by Section 89-818, supra.

April 4, 1938, a decree of foreclosure of the lien was entered by the District Court of Laramie County in the suit above mentioned, and it was ordered that Lot 8 of Block 303 aforesaid, with other property:

"be sold by the Sheriff of Laramie County, or any Deputy, such sale and all proceedings incident thereto to be in accordance with the sale of property upon or under foreclosure of real estate mortgages, inclusive of the right of redemption; that report of said sale be made to this Court, and an order obtained confirming said sale; that Certificate of Sale be issued and, after the period of redemption has expired, a Sheriff's Deed be issued to the purchaser."

The property was sold pursuant to this decree, the report of the sale, held April 4, 1938, filed May 16, 1938, showing its purchase by the defendant Baron. This sale was, by court order of May 16, 1938, confirmed. The same day the Sheriff of Laramie County issued a certificate of sale and thereafter, on February 15, 1939, a sheriff's deed, to defendant Baron. The original sheriff's deed purported to convey "Lot 303 in Block 8" and not Lot 8 in Block 303. Before the trial in the

district court this mistake in the description was discovered and altered by the defendant Baron's typist to read "Lot 8 in Block 303".

Under the law and facts as thus outlined it is claimed, among other things, that the constructive service in the foreclosure suit was as to the plaintiff in the case at bar a nullity and the decree made thereon entirely void.

The proof was that the correct address of the plaintiff was on file, not only with the County Assessor of Laramie County from 1932 to 1938 as to tax assessments, and with the County Treasurer as to the payment of taxes, but also with the City Clerk of the City of Cheyenne as to water tax charges. Plaintiff testified that she knew nothing of the foreclosure suit until sometime in either March or May, 1939, and that she then came to Cheyenne and employed counsel to maintain her rights.

The trial court in the case at bar found generally in favor of the plaintiff and that she was

"entitled to have the deed of the premises involved in this action which was issued to the defendant Edwin W. Baron by the Sheriff of Laramie County, Wyoming, set aside and cancelled and held for naught, and that said plaintiff is entitled to have the sale of said property under the judgment entered in the District Court of the First Judicial District of Laramie County in the case of the City of Cheyenne, a municipal corporation, plaintiff, vs. G. H. Troastle, et al., defendants, said case being Docket 21, Case No. 205 on the dockets of said Court, and said judgment being dated April 4, 1938, cancelled, set aside and held for naught,"
* * *

and

"entitled to be placed in immediate possession of the property described in her petition and involved in this action."

The court further found that:

"plaintiff should pay the defendant Edwin W. Baron the following items, to-wit:

| | |
|---|---|
| Purchase price paid for said property at the attempted sale thereof by the defendant Edwin W. Baron | $608.14 |
| Water rentals paid | 78.33 |
| Repairs to the improvements on said property paid | 88.89 |
| Taxes on said property for year 1939 paid | 118.36 |
| City improvement assessment paid | 104.01 |

making the total sum paid $997.73, and that said plaintiff is entitled to have deducted from said sum rentals collected by said defendant while in the wrongful possession of said property the sum of $760.00, leaving a balance of $237.73, which the defendant Baron is entitled to have refunded to him by said plaintiff."

The proof on the trial of this case was to the effect that defendant Baron had made the payments listed above in the judgment aforesaid and received the rentals as stated therein.

We are of the opinion that there is ample evidence in the record to sustain the findings of the trial court. Under the situation disclosed, a number of matters are argued as showing the invalidity of the foreclosure proceeding and its culmination in a sheriff's deed to defendant Baron in the case at bar. We think it sufficient, however, to say that we consider the district court was not authorized to enter a judgment foreclosing the City of Cheyenne's lien for improvements upon the real estate involved herein under the circumstances shown.

We may observe that the affidavit which was filed by the municipality as above set forth does not undertake to give the known residence address of defendant Ida Elstermeyer. It merely states that she is a nonresident of the State of Wyoming and supplies the information only that the "last known" address of

Ida "Elestermeyer" is "916 West 21st Street, Cheyenne, Wyoming". Under such circumstances it would seem that it was not only proper but necessary for the City of Cheyenne to file an affidavit as required by Section 89-818, supra, for the purpose of establishing that the residence of the defendant was unknown and could not "with reasonable diligence be ascertained". It is undisputed that such an affidavit was never filed in the foreclosure suit.

The testimony of the Deputy County Treasurer of Laramie County, that of the County Assessor of that county, and that of the Deputy City Clerk of the city itself, all disclose that the city and street address of Mrs. Elstermeyer's California residence was of record in these several offices at the time of the commencement of the action to foreclose the lien claimed by the municipality aforesaid.

We cannot help feeling that the exercise of very little diligence on the part of the City to ascertain the actual residence of the owner of the property here involved would demand that the records in these several offices be examined. Having in mind the duties of the above mentioned officers, it would certainly seem that the records of such offices would be among the very first sources of information on this matter which would be consulted by anyone really desirous of ascertaining the correct non-resident address of the owner of the real estate aforesaid. Her property was by law required to be assessed. She was by law required to pay the taxes laid thereon, and the ordinances of the city also required her to pay water taxes imposed on said property when improved, as this property was.

The rule is that where the statute requires an affidavit as directed by Section 89-818 supra, and it is not filed under circumstances such as the case at bar discloses, failure to make and file such an affidavit prevents the entry of a legal judgment. Ensign v. Ensign,

45 Kan. 612, 26 P. 7; Larimer v. Knoyle, 43 Kan. 338, 23 P. 487. While the statute of Kansas is not phrased exactly the same as the Wyoming law touching constructive service, in the matter of filing affidavits the legal principle of that type of service would appear to be analogous. See also Citizen's Nat. Bank of Washington, Pa., v. Union Cent. L. Ins. Co., 19 Oh. Dec. 507, where the court said:

"The court is further of the opinion that the evidence discloses that plaintiff well knew the residence of the defendant Wright when the former action was brought in this court, and that inasmuch as no affidavit was filed in said cause before the hearing and the rendition of the judgment, setting forth that the defendant Wright's residence was unknown and could not, with reasonable diligence, be ascertained, as required by Sec. 5045 Rev. Stat., the judgment rendered against said Wright is null and void and of no force and effect."

This last mentioned case was subsequently reversed. Citizen's Bank v. Insurance Co., 12 Oh. C. C. N. S. 401, and the court said:

"The most serious objection under this head is the statement of plaintiff that the residence of defendant 'is unknown', when it well knew that he resided in Buffalo, N. Y.; but even in such case the defendant must in his petition to vacate the judgment set forth his defense to the action. Section 5358, Revised Statutes."

We may here note in the case at bar that so far as concerns the matter of a defense to the foreclosure suit, however, facts were pleaded and proven by the plaintiff that she had a right to redeem from the foreclosure suit and that that right had not been extinguished. This fact the district court recognized by the judgment rendered below disposing of the cause.

Again, it may be observed that the lien undertaken to be foreclosed on behalf of the city aforesaid was not made the basis of a suit against the defendant, but

against one Ida "Elestermeyer". If this be regarded as a misnomer, the rule is, as stated in Honeycutt v. Nyquist, Peterson & Co., 12 Wyo. 183, 74 P. 90, as follows:

"The authorities are not harmonious as to the effect of a misnomer when the defendant does not appear. Some cases hold a judgment to be void when rendered in the absence of the defendant under such circumstances, while in others it is held that where the party intended to be sued is served with process in which he is incorrectly named, he must appear and object to the misnomer, or he will be bound by the judgment. Although where the service has been substituted or constructive, it is generally held that, in the absence of appearance, a defendant so sued would not be bound."

See also Ohlmann v. Clarkson Sawmill Co., et al., 222 Mo. 62, 120 S. W. 1155; Schoenfeld v. Bourne, 159 Mich. 139, 123 N. W. 537; Fanning v. Krapfl, 61 Ia. 417, 14 N. W. 727, 16 N. W. 293; Hubner v. Reickhoff, 103 Ia. 368, 72 N. W. 540; Hoffman & Hoffman v. Mechanics' American National Bank, (Mo. App.) 287 S. W. 874, 876; Troyer et al. v. Wood, 96 Mo. 478, 10 S. W. 42.

In the last case above cited it was held that a sale of the land of Daniel Troyer for taxes in a proceeding against and notice to Daniel Trager by attempted constructive service was a nullity, though the latter name was taken from the record of Daniel Troyer's deed. The Supreme Court of Missouri, speaking through Mr. Justice Sherwood, in the course of the opinion filed said:

"What effect did the tax proceedings and judgment against Daniel Trager have against Daniel Troyer? It is a principle of universal justice that no one shall be condemned in his person or property without notice, and opportunity to be heard in his defense. Notice is therefore essential to the jurisdiction of all courts; and the rule which requires that it be given to the party whose interests and rights are sought to be affected by

judicial proceedings, is as old as the law itself. A judgment, without notice given, without opportunity to be heard, possesses none of the attributes of a judicial determination; it is simply judicial usurpation and oppression; a mere arbitrary edict, based upon an *ex parte* statement, and entered upon the records of the courts in defiance of the maxim *audi alteram partem.* Such a judgment deserves not the name it bears, and will not be respected and upheld in any forum where right and justice are administered. This doctrine is met with and approved at almost every turn you take in the broad fields of adjudication, and is announced by authorities too numerous for computation. (citing cases) * * * * Our statute in relation to proceedings where publication of notice is authorized as to non-resident, or absent parties, requires that the court or clerk 'shall make an order directed to the non-residents or absentees, notifying them of the commencement of the suit', etc. Sec. 3494. This section of course means that the names of such non-residents or absentees shall be specified in the order. In no other conceivable way could the order be 'directed' to them. This view is enforced by section 3499, requiring certain things to be done where the names of parties whose interests are sought to be passed upon are 'unknown' to the institutor of the suit. The name of such non-resident party, or the proper excuse for not giving it, is as essential to jurisdiction in any given case, as is the description of the property sought to be affected by the proposed judgment or decree; and the necessity of such description will not be denied. These premises being granted, it must needs follow that the judgment in the tax suit did not bind Daniel Troyer, as he was not a party thereto; and as he was not a privy in estate, or otherwise, with the defendant in such suit, the only rational conclusion which can be reached is that as to him such judgment was a nullity, and has, as to him and his heirs, no binding force or validity."

It is suggested that our case of Huber v. State Bank, 32 Wyo. 357, 231 P. 63, is in point herein. We cannot agree. That case presented an entirely different situation from that under consideration, and Baron, when he purchased at the lien foreclosure sale attempted as

above described, knew, or should have known, that he was obtaining a defective title.

The defendant City of Cheyenne has been paid the amount it claimed as a lien upon the plaintiff's property. The defendant Baron has been ordered by the judgment rendered in the case at bar to be paid by the plaintiff the amount he expended less the rentals upon the property involved he received.

The defendant Baron set out in his answer to plaintiff's amended petition the amounts expended by him upon plaintiff's property and the district court seems to have treated this as a counterclaim for these amounts. 33 C. J. 236, Sec. 129, says that

"So the presentation of a set-off or counterclaim in an answer or cross bill is held to be such a demand as to start the running of interest on the claim from the date of service of such pleading on the opposite party."

See also Sickels v. Herold, 149 N. Y. 332, 43 N. E. 852; Brown v. Brown, 124 Mo. 79, 27 S. W. 552; Golden et al. v. Cervenka, 278 Ill. 409, 116 N. E. 273.

In the case last cited the court said:

"Interest is allowed because of equitable considerations, and is given or withheld as under all the circumstances of the case seems equitable and just. Keady v. White, 168 Ill. 76, 48 N. E. 314. The Central Trust Company having received funds which belonged to the trust and savings bank, if it retained them without authority of law, should account for the interest from the time a demand was made for payment, which was when the cross-bill was filed. Whittemore v. People, 227 Ill. 453, 81 N. E. 427, 10 Ann. Cas. 44."

We think, accordingly, that under the peculiar circumstances presented by the record at bar that the judgment should not be disturbed other than to modify it by allowing interest at the rate of seven per cent to the defendant Baron from the date of filing his answer

272

to plaintiff's amended petition upon the amount expended by him in connection with the real estate involved, less the rentals received by him as aforesaid. On that date, the plaintiff knew how much Mr. Baron had expended upon the real estate involved, a demand had in effect been made therefor, and she could have prevented the running of interest by tendering the amount thereof. The judgment of the district court of Laramie County will accordingly be thus modified and as so modified, affirmed.

*Modified and affirmed.*

KIMBALL and BLUME, JJ., concur.