(No. 29375.—

Joseph B. Woodruff, Appellant, *vs.* The City of Chicago, Appellee.

*Opinion filed Sept. 18, 1946—Rehearing denied November 14, 1946.*

544

CONCANNON, DILLON, SNOOK & ARTHUR, of Chicago, for appellant.

BARNET HODES, Corporation Counsel, (J. HERZL SEGAL, CHARLES B. COLLINS, and L. LOUIS KARTON, of counsel,) all of Chicago, for appellee.

Mr. CHIEF JUSTICE GUNN delivered the opinion of the court:

An action at law was instituted by Joseph B. Woodruff against the city of Chicago to recover two special assessments paid by him to the city of Chicago in the years 1927 and 1928. They will hereafter be referred to as the Taylor street improvement and the Jefferson street improvement. During the pendency of the lawsuit the Jefferson street improvement was completed, and upon trial the superior court found in favor of the defendant on this claim. The Taylor street improvement was never completed, and upon trial the court entered judgment in favor of the plaintiff for two payments made on account of the assessments thereon aggregating $10,480.76. On appeal to the Appellate Court for the First District the judgment in favor of the plaintiff on the Taylor street claim was reversed, and the judgment of the superior court upon the Jefferson street assessment was affirmed, the result being the Appellate Court held the plaintiff was not entitled to recover on account of any of the payments made. We have allowed an appeal to this court.

The facts with regard to the Taylor street improvement are as follows: In July, 1921, an ordinance was passed by the city of Chicago for the widening of Taylor street between South Halsted street and South Canal street, by condemning all private property lying between the south line of Taylor street and a line 20 feet southerly thereof and parallel thereto. The purpose was to widen the street to a width of 80 feet, and increase the width of the paved

portion from 36 feet to 56 feet. August 25, 1921, the city filed its petition to condemn the property necessary for widening Taylor street, and to confirm a special assessment to pay for the costs thereof. In May, 1924, an ordinance was adopted to pave Taylor street as proposed to be widened by the previous ordinance.

Upon the trial of the condemnation proceeding the ordinance for paving and improving Taylor street was introduced in evidence as justification for the exercise of the right of eminent domain in taking 20 additional feet of land for street purposes. In September, 1927, the assessment against plaintiff's property in the sum of $6327 was confirmed in the condemnation proceeding, as a benefit against the property, and a further deficiency assessment confirmed by a later judgment on February 29, 1928, in the sum of $4153.76. June 14, 1928, the plaintiff paid both of these assessments, a total of $10,480.76. May 25, 1927, the city council of Chicago ordered the May 28, 1924, ordinance canceled and repealed, and May 30, 1927, a new ordinance for paving and improving Taylor street was adopted, and judgment finally confirmed July 29, 1930.

August 11, 1930, bids were received for the improvement of Taylor street under this last ordinance, which, when opened, were more than $31,000 over the estimated costs of the improvement. None of the assessments for the improvement by paving Taylor street have ever been placed in collection or paid. In July, 1940, Taylor street was designated as an arterial highway, which could be improved out of any money received by the city of Chicago from the motor fuel tax, and in September, 1940, $100,000 was allocated from such motor fuel tax fund to be used for such purpose. None of it was ever used, and no complete plans for the improvement of Taylor street, as originally contemplated, were ever prepared so that a contract could be let for the completion of the work. From September 18, 1940, to the date of the filing of the suit the

city of Chicago received $6,054,189.60 from the motor fuel tax fund, none of which was used on Taylor street.

The Appellate Court held there was no abandonment on the part of the city of Chicago to improve Taylor street, and hence, there being no abandonment, the plaintiff's action, if any, must be for damages. In holding the plaintiff could not recover for damages in the complaint in the case, the Appellate Court overlooked there was an agreed statement of facts which contained a stipulation, *viz.*, "Any party may assert any ground of recovery or defense based upon the facts stated in said 'Statement of Agreed Facts,' and upon such facts as are known by judicial notice as fully as though such ground of recovery or defense had been asserted by an appropriate pleading." In such cases the parties are not restricted to the strict language of the pleadings, and, if the plaintiff was entitled to recover upon the admitted facts, the form of the pleading would be immaterial in view of the stipulation. *Miller* v. *McManis,* 57 Ill. 126; *Whitehouse* v. *Halstead,* 90 Ill. 95.

The question of the right of a landowner to recover special assessments paid because of abandonment has been before courts several times and recovery allowed. The question is presented to this court in a somewhat different manner. Taylor street was to be improved by widening and by increasing the width of the pavement. The improvement could not be done without acquiring additional roadway space by eminent domain. The statute requires the payment of just compensation when property is acquired by eminent domain. The proceeding took the form of two ordinances, the first to widen the street and acquire the ground necessary; and the second to increase the width of the roadway and pave the same after the acquisition of the additional ground.

It was necessary, in the proceedings to acquire the additional land, for the city to show as a basis of the exercise of the right of eminent domain that it was to be devoted

to a public purpose, as required by sections 84-13 to 84-33 inclusive, of the Revised Cities and Villages Act, (Ill. Rev. Stat. 1945, chap. 24, pars. 84-13 to 84-33, incl.,) and this public purpose was shown in the eminent domain proceedings by the introduction of the ordinance authorizing a special assessment to be levied for the purpose of paving the roadway of the street when widened. Under the local improvement statute the two proceedings were dependent upon each other, since the eminent domain right could not be exercised without an ordinance authorizing the improvement of the additional width acquired for the street; (*Village of Glencoe* v. *Stone,* 296 Ill. 177; *City of Chicago* v. *Kemp,* 240 Ill. 56;) and the ordinance for paving the surface could not legally have been exercised without acquiring additional road space for that purpose.

In our opinion the manner of the proceeding did not foreclose the plaintiff from seeking a recovery of the assessment paid for the widening of the street, if the city did not perform the condition precedent for the exercise of eminent domain by in good faith proceeding with the pavement of the roadway, as contemplated and represented in the original ordinance of May 28, 1924. It is well settled that in case a city abandons a street improvement authorized to be paid by special assessment, persons paying such assessment may recover the same from the city in an appropriate action. *Bradford* v. *City of Chicago,* 25 Ill. 349; *District of Columbia* v. *Thompson,* 281 U. S. 25, 74 L. ed. 677, and cases in note.

The Appellate Court holds substantially as a matter of law that the admitted facts do not disclose an intention upon the part of the city to abandon the improvement. The admitted facts show the following: After the May, 1924, ordinance was adopted for improving the surface, and used in the condemnation trial, it was canceled and repealed by the city May 27, 1927. A new ordinance for this same purpose was passed in 1930, and when it was

discovered that the bids were $31,000 in excess of the estimated costs no steps were ever taken to put such assessment into collection, and upon oral argument the attorney admitted that so far as these assessments were concerned they could probably be deemed abandoned. No money was used from the motor fuel fund, and in its answer the city admits it has not carried out the improvements because of the economic depression, and because a contractor would not accept special assessment bonds on such work unless his bid was so high as to enable him to sell them at a low rate and still make a profit.

The answer further sets out that due to the economic depression the owners are still unable to pay the special assessments, and that to pave the street at this time would result in the loss of property, and that to pave Taylor street a special assessment would require the expenditure of much greater sums than such paving would be worth. The testimony of a member of the board of local improvements discloses there was no definite time fixed when the work would be done. In one place he said "we were to go ahead with the pavement when the opportunity came along to permit it;" and in another place: "It was the intention of the board to complete these improvements in reference to the paving of Taylor and Jefferson streets when the opportune time came." There is nothing in the answer of the city which indicates when the "opportune time" will come, or when conditions will permit it. The statement of the member of the board, together with other circumstances narrated, certainly does not indicate an intention to proceed with the improvement at an early date.

A special assessment proceeding contemplates the property assessed will be benefited to the extent of the cost of the improvement. The cost of an improvement depends upon many things, including the general economic condition of the country. The cost of an improvement in 1927 might make it beneficial in 1927, but does not establish that

the same improvement would be beneficial today at present costs.

We will take judicial notice of the fact that the intervening years have increased the costs of material and labor, so that to complete the improvement of the street as originally contemplated might result in a cost far more than the beneficial effect it would have upon the property. On the other hand, if values of real estate have changed, the offset of the value of the land taken against the benefit assessed (Ill. Rev. Stat. 1945, chap. 24, par. 84-16) might give an entirely different result in fifteen years. The statute contemplates reasonable dispatch in proceeding with an improvement, and economic conditions present no excuse for unreasonable delays. *Wall* v. *Chicago Park Dist.* 378 Ill. 81.

The appellee indicates in two unmistakable ways that it has no present intention, and has had none for some little time, of doing the work contemplated: (1) There is now no effective ordinance levying an assessment for street improvement, as it is conceded the assessment for street improvement has never been put into collection, and collection of that assessment has been abandoned; and (2) the statement is made that they are waiting for an opportune time, which means no time has been fixed, because there is no way of determining when an improvement can be made at a cost that will benefit the property.

In *District of Columbia* v. *Thompson* the court held one of the controlling tests of abandonment was an absence of showing in pleading and proof of intention to proceed, when the failure to proceed with work for a number of years made such affirmative showing necessary.

The case of *Boss* v. *District of Columbia*, 134 Fed. 2d 14, cited by appellee does not sustain a contrary principle, because there the court found most of the work was done at the time suit was filed, and was still in process of completion, all of which was affirmatively set out in the answer.

Likewise it is urged by appellee that the improvement of street widening has been completed, and therefore no claim of failure of consideration or abandonment can be sustained. This claim is unfounded. If the widening ordinance, only, had been adopted it would have been invalid and unenforcible because no provision was made for the improvement of the land taken. (*Village of Glencoe* v. *Stone,* 296 Ill. 177.) Considering the two ordinances as the authority for *widening* and *improving* the roadway of the street, the abandonment of the latter would leave the former as though the improvement ordinance had never been adopted. After the city has abandoned a necessary part of the plan of improving this street it would be a perversion of the law to hold that an assessment not enforcible except under the ordinance, which in the first instance created the obligation to pay, becomes binding on the property owner only because he paid his assessment, relying upon its enforcement.

It is also contended by appellee that the remedy is a suit for damages, and that the basis of the recovery in the complaint was a failure of consideration. As pointed out above, the stipulation provided that any cause of action or any defense justified by the agreed facts could be adopted by either party. Under this stipulation it would be competent for the court to consider whether the true remedy was damages. If this be conceded, the damages could not be less than the amount paid by appellant. The sum paid is the presumed benefit, less the actual value of the land taken, (Ill. Rev. Stat. 1945, chap. 24, par. 84-16,) so it is apparent the widening and the increase in width of the roadway must have been the controlling feature which would make the benefit to appellant $10,000, or more, in excess of the value of the land taken. The city still has the land; it is unimproved; it still has upon it the debris caused by the removal of the front part of the buildings, and certainly the appellant has not received any benefit pre-

sumed to have accrued by the widening of the roadway, and, likewise, certainly is not benefited by having in front of his premises an incomplete and unfinished portion of a roadway. We find this point to be without merit.

It is also contended the plaintiff is barred from recovery because of the limitation of his cause of action; that plaintiff must sue within five years from the date the cause of action accrued. Appellee contends there never has been an abandonment, and under this theory no cause of action has ever accrued. And, likewise, the contention is made, if abandonment has been established, that it occurred more than five years ago. It is unnecessary to discuss these inconsistent positions for the simple reason that funds received by the city from a special assessment proceeding are considered trust funds, (*Conway* v. *City of Chicago,* 237 Ill. 128; *Rothschild* v. *Village of Calumet Park,* 350 Ill. 330,) and the statute of limitations cannot be urged against an accounting for trust funds. *Barnes* v. *Barnes,* 282 Ill. 593.

Appellant contends he is entitled to interest upon the fund retained by the city, at least from the time when suit was commenced. This is based upon section 2 of the Interest Act, (Ill. Rev. Stat. 1945, chap. 74, par. 2,) which allows interest on money withheld by unreasonable and vexatious delay in payment. We do not think that statute applies to the present situation. While we believe the facts indicate the city abandoned the Taylor street improvement, still we do not believe it would have been justified, without an order of court, in disposing of the money collected by reason of the special assessments; nor, on the other hand, could it be charged with interest, unless the delay was unreasonable and vexatious.

In *Whittemore* v. *People,* 227 Ill. 453, we held that merely retaining money without doing anything to cause a delay in payment does not come within the statute, saying: "To make the delay both unreasonable and vexatious,

the debtor must in some way have thrown obstacles in the way of the collection of the demand, or by some circumvention or management of his own have induced the creditor to prolong taking proceedings to collect the debt longer than he would otherwise have done." These facts do not appear, and when it is remembered that the right to interest is based upon statute and did not exist at common law, (*Totten* v. *Totten,* 294 Ill. 70,) it should not be required to be paid unless directly coming within the terms of the statute. We do think, however, that it should be allowed from the date of the judgment in the superior court of Cook county.

The facts with respect to Jefferson street are almost the same, except that during the pendency of the lawsuit the Jefferson street improvement was completed and confirmed by the court. Since the improvement of Jefferson street has been completed it cannot be said there has been any abandonment of the proceeding to justify allowing damages because of unreasonable or vexatious delay, if the delay in installation of the improvement could be construed as giving a ground for damages.

The judgment of the Appellate Court for the First District is reversed as to the count of the complaint based upon the Taylor street improvement and that cause remanded to the superior court of Cook county with directions to enter judgment against the appellee, together with interest from May 19, 1944; and the judgment of the Appellate Court for the First District as to count 2 of the complaint, affecting the Jefferson street improvement, is affirmed for the reasons set forth herein.

*Affirmed in part, and reversed in part,*
*and remanded, with directions.*