Armin F. Hillmer et al., Appellees, v. Chicago Bank of
Commerce et al., Appellees.
Benevolent and Protective Order of Elks of the United
States et al., Intervening Petitioners and Appellants.

Gen. No. 45,722.

Opinion filed March 16, 1953. Released for publication April 6, 1953.

JOHN S. MILLER, THOMAS H. FISHER, and NORMAN CRAWFORD, all of Chicago, for appellants.

LEONARD & LEONARD, SEYFARTH and ATWOOD, OWENS & OWENS, and MURPHY, PEARSON & O'CONNOR, all of Chicago, for certain appellees; KARL EDWIN SEYFARTH, and BENTON ATWOOD, both of Chicago, of counsel.

HUBBARD, HUBBARD & DORGAN, of Chicago, for certain other appellees; ALVIN G. HUBBARD, of Chicago, of counsel.

METZDORF and BROWN, JOHNSON and WILES, SCHRADZKE and GOULD, and THOMAS H. FITZGERALD, all of Chicago, for certain other appellees; EDWARD J. METZDORF, of Chicago, of counsel.

MR. JUSTICE NIEMEYER delivered the opinion of the court.

The Benevolent and Protective Order of Elks of the United States of America, a corporation, and John Marshall Law School, a corporation (hereinafter respectively called the Elks and Law School), creditors of the insolvent Chicago Bank of Commerce, appeal from five orders entered in this cause, a creditors' suit to enforce the constitutional and statutory liability of the stockholders, as follows:

(1) Order entered July 12, 1951, permitting M. L. Joslyn to file his petition offering to pay $57,100 in full settlement of the liability of his son George R. Joslyn (hereinafter called Joslyn), a stockholder defendant.

(2) Order of July 18, 1951, approved by plaintiffs and certain defending stockholders (hereinafter referred to as overpaying stockholders), accepting the offer; finding that said sum had been paid to the receiver in open court; ordering and decreeing that the rights, claims, etc., of each and every creditor against Joslyn arising because of his ownership of stock in the bank be and the same are thereby satisfied in full and completely discharged; permanently enjoining and re-

straining each and every creditor of the bank, their agents and attorneys from instituting and from prosecuting any claims, demands, actions, causes of action, proceedings at law or in equity against Joslyn on account of any claim, demand, debt or right because of ownership of stock in the bank.

(3) Order of August 22, 1951, ordering that the receiver pay and distribute to Wade Fetzer, Jr., and other stockholders (hereinbefore referred to as overpaying stockholders) $50,972.79, the balance of the refund to which they were entitled under decree entered February 14, 1950 finding that the stockholders named therein had made overpayments totaling $145,636.56 on their liability and imposing a trust, for the use and benefit of the overpaying stockholders, upon all the funds then in the possession of the receiver and all moneys to be thereafter received by him on account of liabilities of stockholders after payment from said funds and moneys of all the costs and expenses of the receivership.

(4), (5) Orders entered September 20, 1951 (a) modifying the provisions of the order of July 18, 1951 enjoining and restraining the creditors of the bank, their agents and attorneys; (b) denying leave to the Elks and Law School to file their respective petitions presented September 13, 1951.

Thomas Hart Fisher, one of the attorneys for the Elks but not a party to the record, appeals from the order of July 18, 1951 and the order of September 20, 1951 modifying the prior order.

The bank commenced business April 5, 1930. June 25, 1932 the Auditor of Public Accounts closed it and instituted liquidation proceedings. On the same day Armin F. Hillmer and others, as representatives of all creditors of the bank, instituted this suit to enforce the liabilities of the stockholders to the bank creditors. May 9, 1934 an amended and supplemental complaint

514

was filed alleging, among other things, that the defendant Joslyn was the owner of record of 1142 shares of the par value of $50 per share from February 10, 1932 to June 25, 1932 and is liable to the creditors of the bank for the aggregate par value of his stock, or $57,100. In 1936 Joslyn filed a petition in bankruptcy, was adjudicated a bankrupt and discharged. September 16, 1938 he filed his answer herein, setting up his discharge in bankruptcy.

The bankruptcy proceedings were reopened May 20, 1946 on petition of the Elks as a depositor in and creditor of the bank, alleging fraudulent concealment of assets and fraudulent misrepresentation of creditors in the sworn bankruptcy schedules (*In re Joslyn's Estate,* 171 F. (2d) 159; *Young v. Handwork,* 179 F. (2d) 70.) On the same day, "in order to preserve the estate and to prevent loss thereto," all persons were enjoined from in any manner prosecuting any action or suit against Joslyn or against any of his assets without leave of court. June 30, 1950 Joslyn filed his petition praying that his stockholder's liability be determined and that he be permitted to pay all claims and the costs, fees and expenses assessable against the bankrupt estate. The trustee in bankruptcy answered the petition. He also filed a setoff and counterclaim. The overpaying stockholders intervened, setting up a preferred claim of $50,972.97—balance of refund due under decree entered herein February 14, 1950. Hillmer on his own behalf and as representative of all other creditors of the bank filed a claim, based on Joslyn's liability as a stockholder, for $57,100 and legal interest at 5 per cent from the adjudication of Joslyn as a bankrupt in 1936. The referee reported March 16, 1951, recommending that the claim against Joslyn because of the ownership of stock in the bank be determined in this cause and that the claim as determined herein be filed, allowed and paid in the bankruptcy proceeding. While

the report was under advisement judgment for $57,100 was entered in this cause against Joslyn, paid by his father, and all liability of Joslyn as a stockholder satisfied in full and completely discharged on July 18, 1951. November 8, 1951 this settlement and adjustment of Joslyn's liability as a stockholder was approved by the bankruptcy court and the petition of the overpaying stockholders held to be a matter to be determined in this cause. *In re Joslyn,* 102 F. Supp. 521, aff'd 198 F. (2d) 673: certiorari denied by Supreme Court of the United States. On August 22, 1951 an order was entered herein, directing payment to the overpaying stockholders of $50,972.79, the balance of the refund due said stockholders under the decree of February 14, 1950.

September 13, 1951 the Elks asked leave to file its petition herein, alleging among other things the foregoing matters and proceedings and praying that the orders of July 18, 1951 and August 22, 1951 be vacated, set aside and declared to be null and void for all purposes, and that the receiver be ordered to make no further distribution of said sum of $57,100 until further order of court. On the same day the Law School asked leave to file its petition, alleging full payment and satisfaction of the decree of February 14, 1950 and praying for a decree that the claims of the overpaying stockholders have been fully satisfied of record. Leave to file the petitions was denied September 20, 1951, and that part of the order of July 18, 1951 restraining and enjoining the creditors of the bank, their agents and attorneys from instituting and prosecuting any claims, etc., against Joslyn on account of ownership of stock in the bank was modified by adding thereto a provision that said creditors, their agents and attorneys, are not enjoined and restrained from prosecuting their rights in the Joslyn bankruptcy proceeding, but that said creditors are individually and severally permanently

enjoined and restrained from claiming or asserting in said bankruptcy proceeding that the liability of Joslyn by reason of his ownership of stock in the bank, including liability for interest, if any, exceeds $57,100 heretofore paid to the receiver herein, and from claiming or asserting in said bankruptcy proceeding that the stockholder's liability of Joslyn has not been released and satisfied in full pursuant to the order of July 18, 1951.

The order of July 18, 1951 (hereinafter called the settlement order) authorized settlement of Joslyn's liability as a stockholder by payment of $57,100, the aggregate par value of stock owned by him. The settlement was executed by payment of the required sum and the satisfaction and discharge of Joslyn's liability. The money was paid by his father. It was never an asset of Joslyn or under the control and jurisdiction of the bankruptcy court. The settlement was approved by the bankruptcy court (102 F. Supp. 521) and the Court of Appeals (198 F. (2d) 673). Certiorari denied by the Supreme Court of the United States March 9, 1953. The Elks and the Law School (hereinafter called petitioners) contend that Joslyn should have been charged with interest at 5 per cent per annum from the commencement of the bankruptcy proceeding in 1936, more than $40,000. No provision of Constitution or statute supports petitioners' claim. We know of no Illinois case in which interest has been added to the amount found due from a stockholder. Each reported case affirms the rule in equity allowing interest in a proper case, although not within the precise terms of the statute, if its allowance is warranted by equitable considerations. Interest was denied in these cases because the facts did not establish equitable considerations necessary to the allowance of interest. Thus, in *Lewis v. West Side Trust & Savings Bank,* 376 Ill. 23, it is specifically stated that there is no claim of fraud as a reason for the allowance of interest, and that vexatious

517

delay is not shown. Petitioners base their claim on vexatious delay, effected by fraudulent concealment of assets and creditors in the bankruptcy proceeding.

*Reconstruction Finance Corp. v. Pelts,* 123 F. (2d) 503, was an action to enforce the liability of bank stockholders. The nominee of Pelts, without interest in the stock and presumably without financial responsibility, was a stockholder of record. She was made a defendant. Without disclosing his interest, Pelts secretly financed and directed her defense. After a decree had been entered against her, Pelts' ownership of the stock was discovered and a decree obtained against him, with interest from the date of the decree against his nominee. In sustaining the decree the court said (p. 505):

"The appellant knew he was the real owner of the stock in question, and that the liability was his. Nevertheless, he provided attorneys to defend Edith Levinson's case, and stood by and saw judgment go against her, when he knew it was his liability. It may be true that he was under no duty to speak up and assume that liability. He committed no legal offense when he kept still and let judgment go against Edith Levinson, when he knew that it ought to have been against him; but he is certainly in no position to complain when he is discovered, or to ask a court of equity not to charge him with interest."

■ *McKey v. McCoid,* 298 Ill. 566, was a creditor's suit in which an insolvent husband was shown to have paid certain moneys to or for the benefit of his wife. In affirming the refusal of the Appellate Court to charge her with interest, the court said (p. 572):

"While it is immaterial in determining whether or not there was constructive fraud or fraud in law as against creditors in the payments made, (*Harting v. Jockers,* 136 Ill. 627; *Marmon v. Harwood,* 124 id.

518

104;) it does affect the question as to whether or not defendant in error would have a right to have interest charged on the amount found to have been paid by the insolvent husband for the benefit of the property of Mrs. McCoid. There is no evidence that she received the sums paid to her for the purpose of aiding McCoid to defraud his creditors. The rule followed in equity is to allow interest where warranted by equitable considerations, but where such allowance does not comport with justice and equity it may be disallowed. (*Golden v. Cervenka,* 278 Ill. 409.)"

■■■■ Joslyn was a beneficiary of two trusts, created respectively by his father and mother. He did not schedule his interest in these trusts in the original bankruptcy proceeding. When that proceeding was reopened ten years later, he scheduled his interest without prejudice to his right to assert that such interest was not administerable in the bankruptcy court and was not subject to the payment of his debts. In a suit by the trustee in bankruptcy the trial judge sustained Joslyn's contention. He held that Joslyn's interest in the trusts was not property within the meaning of section 70 of the Bankruptcy act, and that his interest in the trusts and in the income therefrom in the hands and under the control of the trustees of the trust, was clearly within the protection of section 49 of the Chancery act (Ill. Rev. Stats. 1951, chap. 22 [Jones Ill. Stats. Ann. 106.12]) and could not be reached by creditors nor by the bankruptcy trustee acting in their behalf. These holdings were reversed on appeal (179 F. (2d) 70) and Joslyn's interest was held to be property within the meaning of the bankruptcy act, transferable by him and administerable in bankruptcy. So the necessity of scheduling Joslyn's interest in the trusts was a question as to which men learned in law differed. Mistake of law is not fraud.

No presumption of fraud arises from the failure to schedule the interest in the trusts or from the reopening of the bankruptcy estate. Discovery of substantial unadministered assets, however innocently omitted, from the schedules, would require reopening of the proceedings so that complete administration of assets might be had. (U. S. C. A., Title 11, Bankruptcy, sec. 11.) There is neither allegation nor proof in the petitions presented for filing herein of any fact tending to establish fraud in the bankruptcy proceeding, either in the listing of assets or the person or persons to whom Joslyn's liability as a stockholder was owing. The charge of fraud fails. Merely appearing and defending this suit is not vexatious delay. *Lewis v. West Side Trust & Savings Bank, supra.* Consequently, there are no equitable considerations warranting allowance of interest.

 This conclusion effectively disposes of all objections to the settlement order. There was no compromise of Joslyn's liability. The amount obtained by the settlement was the maximum amount recoverable under the Constitution and the statute—the aggregate par value of the stock owned by Joslyn. Neither petitioners nor any other creditor of the bank sustained any loss or damage as a result of the settlement. It is, therefore, immaterial whether Hillmer and other creditors, plaintiffs herein, had authority to consent to the order. Because of the approval of the settlement by the federal courts and the remandment of the overpaying stockholders to the state court for determination in this case of their rights to payment of the balance claimed by them under the decree of February 14, 1950, the extended argument as to the paramount and exclusive jurisdiction of the bankruptcy court is no longer relevant.

 The order of August 22, 1951 directed payment to the overpaying stockholders of $50,972.79, the

balance of the refund due them under the decree entered herein February 14, 1950 fixing the aggregate overpayments of the stockholders named therein at $145,636.56 and directing repayment to the respective stockholders of the amount overpaid by them. No appeal was taken from that decree. It is now final. The amounts therein decreed to be due the respective stockholders cannot now be changed or modified. The contention of petitioners that a percentage of the costs and expenses of prosecuting this suit be deducted from the amount fixed in the decree as owing to the respective stockholders, is an attempt to modify the decree and is wholly without merit.

 Petitioners have no interest in the amount found to be due the attorneys for the overpaying stockholders, as these amounts are to be deducted proportionately from the amount due the interested stockholders. Only the interested stockholders can complain. There is no error in the order of August 22, 1951. Neither is there error in denying leave to file the petitions presented by petitioners.

 Thomas Hart Fisher is not a party to this suit. He is not a creditor of the bank. His only interest is as attorney for the Elks. This is not an appealable interest, and his appeal is dismissed.

 Because of the later decisions in the federal courts, heretofore cited, affirming and approving the settlement of Joslyn's liability as a stockholder under the order of July 18, 1951, that part of the injunction order of September 20, 1951 purporting to limit the claims to be made by the creditors of the bank in the Joslyn bankruptcy proceedings is now moot. We do not determine the objections made to the order.

*Appeal of Thomas Hart Fisher is dismissed: all orders appealed from are affirmed, except injunction order of September 20, 1951.*

FRIEND, P. J. and BURKE, J., concur.