Princess Maya Nicte-Ha, Plaintiff-Appellee, v. Hanns R. Teichert and Gloria Teichert, Defendants-Appellants.

Gen. No. 52,949.

First District, Fourth Division.

January 7, 1970.

Rehearing denied February 11, 1970.

McCarthy, Scheurich, Duffy & McCarthy, of Chicago (John M. Duffy, Emmett D. McCarthy, Terrance E. Leonard, of counsel), for appellants.

Brown, Dashow, Langeluttig, Joseph & Arons, of Chicago (Jack Joseph and Harvey Berman, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendants appeal from a judgment of $11,000 after a jury trial on plaintiff's claim that defendants unlawfully detained and withheld plaintiff's goods and chattels.

On appeal defendants contend that the trial court erred in (1) refusing to instruct the jury that the defendants' liability must be predicated upon their gross negligence; (2) permitting plaintiff's expert testimony as to the value of the detained goods; and (3) denying defendants' motion for judgment n. o. v.

In her complaint plaintiff alleged that she was the owner of certain goods and chattels which included various paintings, sculptures, costumes and jewelry; that the defendants became possessed of the costumes, jewelry and sculptures in January 1958 when she was a guest in their house; that the defendants became possessed of the paintings in April 1960 when they were forwarded to them by the plaintiff from Cuba; and that she has made repeated demands for the return of these items but defendants have unlawfully detained and withheld them from her.

Defendants' answer denied that they became possessed of any of the plaintiff's goods on the dates alleged, or at any time whatsoever; denied that the plaintiff was a houseguest but was rather a tenant; and denied that they ever detained or withheld any property belonging to the plaintiff.

EVIDENCE

Testimony of plaintiff on her own behalf:

She was a citizen and resident of Mexico. She bought and sold paintings, costumes, jewelry and sculptures and operated an art gallery in Mexico for seven years. She is still engaged in the buying and selling of these items. Mr. Teichert operated an art gallery in Chicago when she first met him and she became close friends with the defendants. She was invited to spend Christmas with them in 1957. When she arrived she brought with her costumes, jewelry and sculptures which she used in her work. She was called home to Mexico in early February

339

1958 because her mother was near death. The costumes, jewelry and sculptures remained in the defendants' home.

Forty-five paintings were sent from Cuba to the defendants by her. Mr. Teichert then sent the following reply letter:

"HANS R. TEICHERT COMPANY
AN EYE FOR COLOR.
1311 North Wells Street,
Chicago 10, Illinois.

April 29, 1960

"Dear Princess:

"We finally are in possession of your paintings which are stored in our studio. Gloria will show them and if possible sell them as soon as you let us have the prices.

"When they finally called me to pick up the paintings I found them in terrible shape. They were packed tightly in three crates. When the custom officials pulled them out of the crates, all the frames were broken and since they were packed so tightly, it was impossible to repack them, and we had to pick them up in the condition they are in. *Items 40 to 43 are missing.* They were not packed in the three crates nor are they missing out of these crates because it would have been impossible to pack any more into them. This means there must have been another crate, and since the shipment only called for three crates, I accepted the paintings.

"I would advise that you get in touch with your shipper from Cuba. He might have shipped by mistake only three crates, and one crate might still be in Cuba.

"The frames that are all broken are of course only cheap moldings held together by one nail and they are of no value.

"We would like to hear from you as soon as possible as to how much you have to receive for these individual items so that we can either sell them if possible or return them to you.

Kindest regards,
Hanns & Gloria Teichert

"Princess Maya Nicte Ha
Box 10584

"DECORATORS"

The "missing" items, Nos. 40 to 43, referred to in the letter, are not paintings but books and prints.

The defendants never exhibited the paintings because she did not send them a power of attorney.

She was the owner of the thirteen missing paintings as well as the various pieces of sculpture, costumes and jewelry which she described. The defendants returned thirty-one of the paintings and one costume dress to her. Mrs. Teichert had told her that all the other items were stolen. Mr. Teichert knew nothing about this theft.

She gave her opinion as to the value, in American dollars and in Chicago, of each missing article. She changed the Mexican peso into the dollar to arrive at the correct value. She based her opinion upon her experience as an art dealer and the price she paid for each item.

She had a gallery in Mexico City but did not have a business establishment in Chicago, and she never bought or sold any paintings or costumes in Chicago. The artist who painted the picture put the value on it, but from her experience she knew what value each particular painting should have.

Testimony of Leonard Handmacher, called by the defendants:

He is an attorney of record for the defendants. After plaintiff's complaint was filed, he called Mr. Joseph, one

341

of the attorneys for plaintiff, and asked him to help inventory some boxes of clothes which were stored at defendants' place of business. These articles belonged to the plaintiff. After the inventory, Mr. Joseph signed for the boxes and they were sealed. (The offer of this inventory list into evidence was refused by the court since the list did not show any of the items which were not returned to plaintiff.)

Testimony of Hanns Teichert, one of the defendants, in his own behalf:

He bought, appraised and exhibited paintings but never sold them. He did not consider himself an art dealer. He knows very little about Mexican art except for the great masters. He helped the plaintiff get her paintings out of Cuba because she was a friend. One year after the paintings had arrived, he received a letter from the customs office notifying him that the paintings would be sold at auction unless they were picked up. He paid approximately $150 to have them released to him. They were stored in six or eight boxes when he picked them up. They were broken and damaged. He then wrote the letter dated April 29, 1960, stating that he had received the paintings.

He later wrote plaintiff another letter stating that the paintings would sell for little value as they were all unknown artists. He advised her to take them back to Mexico where they would be worth more money. The value he placed on these paintings was based upon his experience in Chicago; however, he could not identify the paintings in his possession as he never looked at them very carefully.

After the plaintiff requested the return of her costumes, sculptures and jewelry which had been left at his house, they were sent to her. He sent as much as he could find. Neither he nor his wife had any of the items listed in plaintiff's complaint in their possession.

On cross-examination he stated that there were additional articles of plaintiff remaining after he had shipped her the costumes and other items. The plaintiff never asked him to return any of the remaining articles. A woman came with a letter from the plaintiff and he let her take whatever remaining items he had belonging to plaintiff. He did not obtain a receipt from this woman.

He knew nothing about his wife's conversation with the plaintiff in which she said that plaintiff's property had been stolen. He did not count the paintings when he picked them up at the customs office and could not recall writing the letter dated April 29, 1960, until it was shown to him to refresh his recollection. He could not remember having a conversation with the plaintiff concerning items 40 to 43. He only knew that they were missing. (These items are not involved in this suit.)

OPINION

Defendants first contend that the trial court erred in refusing to give defendants' Instructions 2, 3 and 4:

DEFENDANTS' INSTRUCTION NO. 2—

A gratuitous bailee is not liable to the bailor for loss or damage to the goods in the absence of gross negligence.

DEFENDANTS' INSTRUCTION NO. 3—

The term "gross negligence" means a course of action which shows an utter indifference or conscious disregard for the property of another.

DEFENDANTS' INSTRUCTION NO. 4—

If you find from the evidence that the defendants are guilty of gross negligence in the keeping of the property which the plaintiff claims that she gave into their possession, then you must find on behalf of the plaintiff.

If, however, on the other hand, you find that the defendants were not guilty of gross negligence in

the maintaining and keeping of the property which the plaintiff claims she gave into their possession, then you must find on behalf of the defendants.

The court did give defendants' Instruction No. 9:

DEFENDANTS' INSTRUCTION NO. 9—

The plaintiff has the burden of proving each of the following propositions:

First, that she is the owner of or entitled to the possession of certain goods and chattels set forth in her complaint.

Second, that the defendants became possessed of the goods and chattels of the plaintiff.

Third, that the plaintiff made repeated demands for the return of the property claimed by her and that the defendants unlawfully detained and withheld said property from the plaintiff.

Fourth, that the plaintiff sustained damages.

If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the plaintiff, but, if, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved, then your verdict should be for the defendants.

The court also gave defendants' Instruction No. 1 defining a gratuitous bailment. Defendants argue that since this instruction was given, it was incumbent upon the court to give their instructions Nos. 2, 3 and 4 on the degree of care required of such bailee. However, defendants' instructions do not accurately define the duty of a gratuitous bailee.*

---

* In "Preparing and Trying Cases in Illinois" edited and sponsored by the Illinois Bar Association, we find the following statement in section 2023:

■ ■ In Miles v. International Hotel Co., 289 Ill 320, 327, 124 NE 599, the court stated:

> A gratuitous bailee of property is bound to take reasonable care to protect it from loss or damage. As bailee the defendant in error was bound to exercise such care and diligence in the preservation of the property intrusted to it as every prudent man takes of his own goods of like character. Ordinary diligence means that degree of care, attention or exertion which under the circumstances a man of ordinary prudence and discretion would use in reference to the particular thing were it his own property. (Schaefer v. Safety Deposit Co. 281 Ill 43.)

In Skelley v. Kahn, 17 Ill 169, 170, the term "gross negligence" was defined as an omission of that degree of care which a gratuitous bailee is required to use and that such care is that which "men of common sense and common prudence, however inattentive, ordinarily take of their own affairs, . . . ."

■ We find no error in the refusal of defendants' instructions.

■ Defendants concede that a bailor establishes a prima facie case by showing delivery of property and a failure to return it and that this presumption must be rebutted by bailee by showing his exercise of the appropriate degree of care in the protection of the property.

---

The standard of care of a bailee was formerly established with reference to the type of bailment. In a bailment for the mutual benefit of the parties, the bailee was required to exercise an ordinary degree of care; in bailments for the sole benefit of the bailor, a slight degree of care was required; and in bailments for the sole benefit of the bailee the courts imposed a high degree of care upon the bailee. Under the modern rule, however, the bailee in any type of bailment is required to exercise that degree of care which a reasonably prudent man would exercise under the same circumstances.

345

Sampson v. Birkeland, 63 Ill App2d 178, 211 NE2d 139. The evidence showed delivery to defendants and a failure to return. Defendants' explanations were presented to the jury which found for the plaintiff. We believe the evidence supports this finding.

The defendants next contend that the trial court erred in refusing to strike plaintiff's testimony as to the value of the withheld items. They argue that the measure of damages for the loss of personal property is determined by the value of the property at the time and place of the loss. When the plaintiff was asked to give her opinion as to the value of the missing articles, it was based upon their individual worth in Chicago in 1962. Furthermore, these articles would have an international worth thereby causing the value in Mexico and Chicago to be approximately the same. If any variation did exist, the defendants could have rebutted the plaintiff's opinion testimony; however, her testimony as to value remained unchallenged.

Defendants also argue that plaintiff's valuation testimony is incompetent and inadmissible because it was not based upon developed expertise. To sustain this contention, the defendants must show a clear abuse of discretion by the trial court in permitting the expert testimony. Only then will we review the trial court's ruling. Bonato v. Peabody Coal Co., 248 Ill 422, 94 NE 69; Moren v. Samuel M. Langston Co., 96 Ill App2d 133, 237 NE2d 759; and Taylor v. The Carborundum Co., 107 Ill App2d 12, 246 NE2d 898. The defendants have failed to prove that the trial court clearly abused its discretion. In Taylor v. The Carborundum Co., supra, 18, the court stated:

> The test of competency for an expert is whether or not he exhibits sufficient knowledge of the subject matter to entitle his opinion to go to the jury. Piacentini v. Bonnefil, 69 Ill App2d 433, 217 NE2d

346

507 (1966). A trial court has broad discretion in determining if a witness has been qualified as an expert. Northern Illinois Gas Co. v. Wienrank, 66 Ill App2d 60, 213 NE2d 411, (1965).

Since the items in question were rather unique in character and could not be exhibited due to their disappearance, their worth had to be determined by a person with special knowledge. The plaintiff was engaged in the business of buying and selling paintings, costumes, sculptures and jewelry for approximately seventeen years. For seven of those years she operated an art gallery dealing in these items. She is still regularly engaged in this type of work. She knew the artist who worked on each painting and from her own experience, in conjunction with the worth each artist placed on his work, she could then establish a value for each painting. She used the costumes and jewelry in giving concerts at schools and universities with the value being determined by the overall cost of each item.

While the plaintiff did not buy and sell paintings, costumes, sculptures and jewelry in Chicago, this only affects the weight that her testimony should be given and not its admissibility. In Buckler v. Sinclair Refining Co., 68 Ill App2d 283, 293, 216 NE2d 14, the court said:

> To render an opinion an expert need only possess special skill or knowledge beyond that of the average layman, and the determination of his qualifications rests within the sound discretion of the trial judge. People v. Jennings, 252 Ill 534, 550, 96 NE 1077. The weight to be attached to such an opinion is a question for the jury in light of the expert's credentials, the facts upon which he bases his opinion and any limitations placed thereon during cross-examination.

347

Therefore, we find that the trial court did not abuse its discretion in permitting the plaintiff to testify as to her opinion of the value of each missing item.

 The defendants also argue that plaintiff's testimony as to value was partly based upon the hearsay testimony of the artists. In testifying, the plaintiff stated that she based the value of each painting on her experience from working with each artist and on the date the particular picture was painted, the older the painting the higher the value. It was her business to know whether the value placed on each painting by the artist was its true worth. In Forest Preserve Dist. of Du Page County v. Harris Trust and Sav. Bank, 108 Ill App 2d 65, 73, 247 NE2d 188, the court, in discussing the admissibility of testimony as to value based upon partial hearsay knowledge, stated:

> In Department of Public Works and Buildings v. Hufeld, 68 Ill App2d 120, 129, 215 NE2d 312 (1966), the court, while paying homage to use of hearsay as a part of the general knowledge and experience only, recognized that valuation opinions based, in part, on hearsay knowledge of other sales are still proper. Also see: Vol 5, Nichols on Eminent Domain, 3rd ed, §§ 18.4, 18.41 and 18.42.
>
> . . . . . .
>
> We do suggest that an otherwise competent valuation witness is not rendered incompetent merely because he bases his opinion, in part, on hearsay knowledge of other sales.

We find that the testimony of the plaintiff was properly admitted.

 Defendants' final contention is that the court erred in refusing to grant its motion for judgment n. o. v. since the plaintiff did not sustain the burden of proving that the paintings were delivered to them. Plaintiff testi-

348

fied that she sent thirty-nine paintings to the defendants and that thirty-one were ultimately returned to her. Mr. Teichert testified that the plaintiff had the paintings consigned to him so that they could be shipped to him in Chicago. The paintings subsequently arrived and he picked them up one year later from the customs office. He then wrote a letter dated April 29, 1960, stating that he was in possession of the paintings. He also stated that he "must have seen the list" sent by the plaintiff describing the items shipped from Cuba. When asked if he had received "everything on this list that was within numbers one to 39," he answered, "Obviously." Defendants assert that the complaint only lists eight paintings; however, one of the items listed is "6 Yucatacan Themes" and plaintiff testified to "Six Yucatacan Themes" each valued at $200. The complaint therefore listed thirteen paintings and the proof related to thirteen paintings. The plaintiff sustained the burden of proving the delivery of the paintings to the defendants. The trial court did not err in refusing to grant defendants' motion for judgment n. o. v.

The judgment is affirmed.

Affirmed.

STAMOS, P. J. and LEIGHTON, J., concur.