NATHANIEL C. HAMILTON, Plaintiff-Appellee, *v.* AMERICAN GAGE & MACHINE CORPORATION *et al.,* Defendants-Appellants.

First District (1st Division) No. 61147

Opinion filed February 2, 1976.

Quinn, Jacobs & Barry, of Chicago (Robert O. Mansell, David J. Corcoran, and Ellen K. Munro, of counsel), for appellants.

Schwartz, Cooper, Kolb & Gaynor, Chtd., of Chicago (Ira S. Kolb and Narcisse A. Brown, of counsel), for appellee.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Nathaniel C. Hamilton (plaintiff) brought action against American Gage & Machine Corporation (American Gage) and Wallace E. Carroll (Carroll), chairman of its board of directors, seeking a judgment for services as a finder in connection with a corporate merger in which American Gage was involved. After trial without a jury, the court entered judgment for plaintiff and against both defendants for $163,130. The court denied interest prior to the date of judgment and attorney's fees. The defendants have appealed. Plaintiff has filed a cross-appeal concerning denial of prejudgment interest.

Count I of plaintiff's complaint sought declaratory relief fixing the terms and conditions of the alleged agreement between the parties and their rights and liabilities. Plaintiff prayed allowance of interest and attorney's fees. Count II sought recovery of a reasonable fee based upon the value of the services rendered which the complaint fixed as 1½% of the value of the entire transaction, or $279,990.72.

Many of the facts are undisputed so that the issues presented to this court have accordingly been narrowed by the parties. Defendants contend that there is no evidentiary basis for determination of the reasonable value of plaintiff's services so that the judgment award was not based on the evidence but was a compromise, thus requiring reversal. Plaintiff contends that the amount found due and owing by the trial court was correct and that the result reached is supported by the evidence. Plaintiff further contends that the trial court erred in not allowing prejudgment interest.

Plaintiff brings possibilities of corporate merger and acquisition to interested parties. In return for these services, plaintiff is paid compensation, sometimes referred to as a finder's fee. Defendant Carroll was an incorporator of American Gage which has acquired some 10 other enterprises. Plaintiff communicated with Carroll and directed his attention to a possible corporate merger or acquisition between American Gage and Katy Industries, Inc.

. The details of the corporate transaction need not be related. The dealings between plaintiff and Carroll and the negotiations concerning the merger continued, with a degree of intermittence, from June of 1967 until May of 1970. It is undisputed that the matter progressed to the point that an acquisition of American Gage was consummated in exchange for Katy corporate stock. The total price for the transaction was determined by the closing quotations of Katy stock on the New York Stock Exchange on May 10 and May 11, 1970. These figures were 10⅛ dollars per share on the first day and 9¾ dollars on the second day. It appears that the transaction involved 1,828,671 shares of Katy stock at the above prices and options granted to the selling shareholders for purchase of 73,600 additional shares at a price of $5.571 per share.

■■ As shown, the sole contention raised by defendants is an alleged lack of evidentiary basis for the amount of the judgment so that the result reached by the trial court was a compromise. In this situation we need not consider and determine whether plaintiff's right to recovery is based upon an express contract or an implied or quasi contract. It is undisputed that plaintiff's services were accepted by defendants and that the transaction was completed by defendants in due course. Where there is no family relation between the parties, and where the services are completed and accepted without any reason to infer that they were gratuitous, a presumption arises that the defendant is liable to pay the reasonable value of the services. *In re Estate of Pomeroy*, 21 Ill. App. 3d 648, 653, 316 N.E.2d 231.

■■ The record here shows without objection a concession of indebtedness by defendants to plaintiff. Defendant Carroll offered plaintiff

$100,000 and thereafter $125,000 as payment for his services. As our summary of the evidence will indicate, the court could have found defendants liable upon an express oral contract or upon a contract implied by law. In such case amendment of pleadings is not necessary to convert the action from a suit upon an express contract to recovery upon *quantum meruit.* (*Nardi & Co. v. Allabastro,* 20 Ill. App. 3d 323, 328, 314 N.E.2d 367, *leave to appeal denied,* 56 Ill. 2d 587.) We therefore conclude that the analysis by defendants is correct and that the only issue here is one of fact regarding sufficiency on the proof as to the amount of compensation to which plaintiff is entitled.

On this point, plaintiff testified that he had a conversation with Carroll in June of 1967. He told Carroll that his compensation would be calculated on the amount involved in the transaction: 5% of the first million; 4% on the second; 3% on the third; 2% on the fourth and 1% on the balance. Plaintiff testified that Carroll told him that in some acquisitions in the past they had paid commissions from 2% to 5%, "and that was okay." This evidence was not denied by Carroll except in a general manner when he testified that he made no agreement with plaintiff at that time.

Plaintiff also testified to a telephone conversation with Carroll on or about December 12, 1967, in which Carroll objected to the percentage schedule. Plaintiff suggested that the schedule be reduced to 5%, 2½% and 1% respectively on the first three units of $1 million each and one half of 1% on the balance, to which Carroll agreed. On December 14, 1967, plaintiff wrote a letter to Carroll, received in evidence, in which plaintiff stated this understanding as a result of the telephone conversation. Carroll admitted receiving this letter to which he made no response and testified that he had no recollection of the telephone conversation outlined by plaintiff.

Plaintiff also testified that about January 28, 1969, Carroll called him on the telephone as a result of which they had a meeting. He stated that while speaking to Carroll plaintiff suggested reduction of the fee schedule so that if the transaction exceeded $20 million, plaintiff's fees would be fixed at one half of 1% of the total gross amount. On February 1, 1969, plaintiff wrote to Carroll specifically confirming the understanding and mutual agreement to this effect. The letter requested a confirmation thereof from Carroll by letter. Carroll admitted receipt of this letter but testified that he had no recollection of the telephone conversation to which it referred.

Plaintiff also testified that he discussed his fees with Carroll during November 1969, and Carroll offered to pay him $100,000. On January 19, 1970, Carroll wrote a letter to plaintiff in which he confirmed the

understanding that plaintiff would receive a $100,000 finder's fee with the option reserved to Carroll to pay this fee in Katy stock. On January 31, 1970, plaintiff wrote to Carroll in reply. He rejected Carroll's offer as not representing the true value of his services. He suggested that "when the deal is finally consummated we sit down and try to work out something that will be agreeable to both of us." Carroll testified that he and plaintiff met with their respective attorneys some time thereafter; perhaps in May 1970 after the transaction was completed. Carroll offered plaintiff $100,000 and then $125,000 but no agreement was reached.

Plaintiff further testified that on May 25, 1971, he spoke to Carroll on the telephone and Carroll offered to pay $125,000. On that same day plaintiff wrote Carroll a letter setting this forth and stating that the offer was unacceptable because it was not consistent with "our first written agreement dated November 1, 1967, and our second modified agreement drawn on February 1, 1969." On May 26, 1971, plaintiff's attorneys wrote to defendants and stated that his claim was for $163,130 plus interest or for $279,990.72 plus interest. In this letter, plaintiff demanded commission of $165,771.83. Plaintiff received no response to this letter. It should be noted here that there never was any written agreement between the parties and no letter dated November 1, 1967, although plaintiff did write to Carroll on February 1, 1969, as above stated. Upon being questioned by the court, plaintiff testified that the total amount involved in the acquisition was $16 million and then stated that the amount was $16,700,000. Plaintiff also stated that under the agreement between the parties, as set forth in his letter to Carroll dated February 1, 1969, the amount due would be approximately $165,000. This amount results from a calculation based upon the value of the transaction as alleged in plaintiff's complaint and the percentages of compensation contained in both of plaintiff's letters to defendants (December 14, 1967, and February 1, 1969).

■■ In due course the trial judge made an oral statement to the parties in which he found that plaintiff was entitled to recover but that there was no agreement between the parties regarding compensation so that he would permit recovery upon a *quantum meruit* basis in the amount of $163,130. Several days thereafter, the court entered a draft order in which he found that there was a valid oral employment contract between the parties upon which plaintiff was entitled to recovery. This finding by the court is amply justified by the evidence. Defendant Carroll's lack of recollection and his vague denials failed to overcome plaintiff's clear and definite testimony and the letters in evidence concerning the agreement for plaintiff's compensation. The

court found the value of the services rendered by the plaintiff "as measured by said contract" was $163,130 and entered judgment accordingly. We are not concerned with the statements made by the able trial judge or with the basis for the judgment. It is the result reached and not the statements or reasons given which are before us for review. Plaintiff has the right to sustain the judgment upon any facts in the record, regardless of the validity of the reasoning of the trial judge. *Chicago Title & Trust Co. v. Schwartz*, 339 Ill. 184, 196, 171 N.E. 169; *Barrett v. City of Chicago*, 11 Ill. App. 2d 146, 159, 136 N.E.2d 564.

The amount of recovery to be allowed plaintiff is an issue of fact resting in part upon computations regarding the total consideration for the transaction. This involved a determination of the value of the Katy stock and a computation upon which the minds of reasonable men might well vary. Plaintiff demanded $163,130, as did his attorneys. This amount is alleged in plaintiff's complaint. Plaintiff also made varying demands such as $163,771.83. Plaintiff's complaint fixes the market value of the shares and options involved in the transaction at $18,666,048. If this valuation be assumed, application of the percentages stated in both of plaintiff's letters to Carroll results in a commission of $163,130, the amount allowed by the court. If the amount of the transaction was $16 million or $16,700,000 in accordance with plaintiff's uncontradicted testimony, the commission would be computed respectively at $156,000 or $159,500.

Plaintiff's demands submitted to defendants in amounts of $163,130 and also in the amount of $165,771.83 were equal to or very close to the amount of the judgment. Defendants offered plaintiff $125,000 but this amount was rejected. Plaintiff also testified that under the agreement between the parties, as set forth in his letter to Carroll dated February 1, 1969, the amount due him would be approximately $165,000. If the valuation of the stock is computed in accordance with the stock exchange prices including the option stock at its specified valuation, the total amount involved in the transaction is very close to the dollar value alleged in plaintiff's complaint.

Starting from this calculation as a basis, the trial court was fully justified in applying to this total value the percentages of 5, 2½, 1 and one half of 1%. Plaintiff testified that these percentages were fixed in a telephone conversation between him and Carroll on or about December 12, 1967. Carroll merely stated that he had no recollection of this conversation. According to this, calculation shows that the value of the services as measured by the oral contract between the parties was precisely the amount found by the trial judge.

Plaintiff offered expert testimony as to the reasonable value of his

services. A witness who had been a specialist in corporate mergers and acquisitions since 1955 testified in response to a hypothetical question that finder's fees in a transaction of this type would be calculated on the basis of 5, 4, 3, 2 and 1% per million dollar value. On this basis he testified that this scale of rates was the standard commission schedule used by his company and that the rates were usual and customary and were applied throughout the country on a national basis, and were in effect in 1967. Upon this basis, assuming a valuation of $18,666,048, as alleged in plaintiff's complaint, the opinion of the expert translates to a finder's fee of $286,660.

■■■ Defendants attack the testimony of the expert on the ground that he failed to establish a customary fee schedule. This contention is not supported by the record. In the absence of evidence to the contrary, the testimony of the expert proved amply that the amount allowed by the court was less than the usual and customary fee for a transaction of this type and magnitude. The sufficiency of the "qualification of an expert witness rests in the discretion of the trial judge * * *." (*Galuccio v. Hertz Corp.*, 1 Ill. App. 3d 272, 280, 274 N.E.2d 178, leave to *appeal denied*, 49 Ill. 2d 575.) Acceptance or rejection of the opinion of the expert was within the province of the trial court as the trier of fact. *Merchants National Bank v. Elgin, Joliet & Eastern Ry. Co.*, 49 Ill. 2d 118, 122, 273 N.E.2d 809; *Nicte-Ha v. Teichert*, 119 Ill. App. 2d 336, 347, 256 N.E.2d 140, *leave to appeal denied*, 43 Ill. 2d 397.

These observations concerning the testimony of the expert are not required to sustain the result reached by the trial court which was predicated upon a proper finding concerning the existence of an oral agreement. However, this testimony demonstrates that the record was also ample to support a finding based upon the *quantum meruit* theory. The amount awarded plaintiff was far less than that fixed by the uncontradicted testimony of the expert.

■■ We find no problem in the contention raised by defendants that there was no mention in the testimony of the exact amount granted by the trial judge. In a similar situation, the contention that the finding of the court was without basis because it was a compromise was rejected. (*Comm v. Goodman*, 6 Ill. App. 3d 847, 286 N.E.2d 758.) As pointed out by the court in *Comm*, there are difficulties in determining the precise amount of the recovery particularly where complicated arithmetical computations are involved, as in the case at bar. In our opinion, the result reached by the trial court is fully justified by the record and is fair and reasonable to all concerned.

The two cases cited by defendants give them no comfort. In *Croft v. Lamkin*, 112 Ill. App. 2d 321, 251 N.E.2d 88, as this court pointed out,

"the court compromised the damages and did not base them on the evidence." *Croft* is cited in *Franzen v. Dunbar Builders Corp.*, 132 Ill. App. 2d 701, 270 N.E.2d 118, *leave to appeal denied*, 47 Ill. 2d 589, where this court used the identical language in a similar case where the result reached by the trial court was unsupported by the record. (132 Ill. App. 2d 701, 710.) In the last analysis, the issue of the amount of recovery here is simply a factual question. Defendants offered no evidence in their own behalf. We cannot say that the amount awarded by the trial court is manifestly against the weight of the evidence. (*Reese v. Melahn*, 53 Ill. 2d 508, 512, 513, 292 N.E.2d 375.) On the contrary, our review of the entire record convinces us that the result reached is justified by the evidence.

Absent an express agreement between the parties, allowance of interest depends upon statutory authority. (See *Pinkstaff v. Pennsylvania R.R. Co.*, 31 Ill. 2d 518, 522, 202 N.E.2d 512.) In this jurisdiction interest attaches as a matter of law upon "all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money lent or advanced for the use of another; on money due on a settlement of account from the day of liquidating accounts between the parties and ascertaining the balance   *   *   *   and on money withheld by an unreasonable and vexatious delay of payment." (Ill. Rev. Stat. 1973, ch. 74, par. 2.) We will consider, in the order stated, the possible application of each of these categories to the case before us.

As regards moneys "due on any bond, bill, promissory note, or other instrument of writing", plaintiff depends upon a letter from Carroll (January 19, 1970) offering to pay plaintiff $100,000. Plaintiff cites *Elgin, Joliet & Eastern Ry. Co. v. Northwest National Bank*, 165 Ill. App. 35. There, the court dealt with a written order from a debtor to the railroad company, duly accepted by that company, for payment to the creditor of a fixed sum on or about a certain day. This court allowed interest from the specified due date. The court pointed out that this written and accepted order was an instrument in writing for the payment of money. 165 Ill. App. 35, 42.

In the case before us, Carroll's letter was an offer which was never accepted. Without such acceptance by plaintiff, this letter did not itself create a liability to pay on an indebtedness. The letter was not comparable to the payment order in the cited case. Plaintiff did not proceed upon the theory of a written contract in the trial court. Defendants were not held liable upon the basis of the existence of this letter since the judgment order granted plaintiff recovery upon the theory of an "oral employment contract." This situation is definitely not within the language of the statute.

■ ■ Each of the categories of bonds, bills and promissory notes specified in the interest statute has the legal attribute of creating an indebtedness. The following general phrase "or other instrument of writing" should thus be construed under *ejusdem generis* to refer only to other similar writings possessing this same legal attribute and themselves creating an indebtedness. *Bullman v. City of Chicago,* 367 Ill. 217, 226, 10 N.E.2d 961.

It is manifest that the instant case does not include "money lent or advanced for the use of another"; or moneys due by virtue of a settlement of account or an account stated or money received for the use of another.

The remaining statutory phrase pertains to "money withheld by an unreasonable and vexatious delay of payment." It is clear from this record that the parties never agreed upon the amount due plaintiff. Count I of plaintiff's complaint requested declaratory judgment by the court to settle the dispute regarding the terms of the contract. Count II claimed $279,990.72 as the reasonable value of plaintiff's services. Although defendants offered $100,000 and again $125,000, neither of these offers was accepted. Therefore, the amount due was never known or agreed upon until fixed by the trial court. As shown, the only contention of defendants in this court is directed to the amount of recovery. It has been repeatedly held that mere filing of an appearance and conducting a defense in a piece of litigation does not constitute the statutory delay. The courts have even held that, where payment is delayed as a result of litigation, plaintiff must establish conduct by a litigant "which approximates actual fraud" to come within this statutory language. (*Kespohl v. Northern Trust Co.,* 131 Ill. App. 2d 188, 191, 266 N.E.2d 371, and cases there cited.) The language used by this court in *Kespohl* is well repeated here:

> "It has been consistently held that in order to collect interest on a theory of unreasonable and vexatious delay, the evidence must show that the debtor had thrown obstacles in the way of collection or by some circumvention or management of his own had induced the creditor to delay taking proceedings to collect the debt longer than he would have otherwise done. (*Hitt v. Allen,* 13 Ill. 592; *Whitemore v. People,* 227 Ill. 453, 81 N.E. 427; *Woodruff v. City of Chicago,* 394 Ill. 542, 69 N.E.2d 287.) Merely filing an appearance and conducting a defense to a lawsuit however does not constitute such delay. (*Lewis v. West Side Trust & Sav. Bk.,* 376 Ill. 23, 32 N.E.2d 907; *Hillmer v. Chicago Bk. of Commerce,* 349 Ill. App. 510, 111 N.E.2d 194.) In *Aldrich v. Dunham,* 16 Ill. 403, the court said (p. 404): 'To appear and de-

fend a suit is a right which cannot be construed into unreasonable and vexatious delay of payment without impairing the right itself.' Where therefore the delay in payment is the result of litigation, the petitioner must establish contrivance on the part of the litigant which approximates actual fraud. (*Cooper v. Brogni*, 50 Ill. App. 2d 70, 199 N.E.2d 619; *Firemen's Ins. Co. v. Newell*, 10 Ill. App. 2d 371, 135 N.E.2d 116.)"

None of these elements as discussed in *Kespohl* are present in the case before us. The debtors here did not induce delay except through the employment of legal process. The only authority cited in this regard by plaintiff is *Sanderson v. Read*, 75 Ill. App. 190, decided by this court in 1897. The case involved an action on a written contract with specified payments to be made upon certain days. This court held that the evidence was conflicting as to unreasonable and vexatious delay but the facts creating liability were not denied "and no evidence was offered tending to show ground for refusal." *Sanderson* is in no sense applicable to the case at bar. Here, no agreement was reached to pay any specific amount. Very shortly before the filing of suit, plaintiff himself made conflicting demands as to the amount due.

■■ In essence the determination of the existence of "unreasonable and vexatious delay of payment" is an issue of fact. The record shows that the trial judge conducted the hearing in a careful and conscientious manner. He saw and heard the parties themselves. We cannot say that his determination of this narrow factual issue was contrary to the manifest weight of the evidence. In our opinion the trial court correctly denied plaintiff's claim for prejudgment interest.

Judgment affirmed.

EGAN and SIMON, JJ., concur.